**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| | § | |
| VS. | § | CRIMINAL  NO. H-12-691 |
| | § | |
| | § | |
| DAVID MORSE BARRY | § | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

David Morse Barry was indicted on two counts charging conspiracy to produce child pornography and two counts charging production of child pornography by a parent or guardian, in violation of 18 U.S.C. § 2251(b) and 18 U.S.C. § 2251(e).  Barry waived his right to a jury trial under Federal Rule of Criminal Procedure 23(a), with the government's consent and, after a hearing, the court's approval.

The court held a five-day bench trial beginning on April 21, 2014.  Special Agent Jeffrey Glen Chappell of the Department of Homeland Security–Homeland Security Investigations ("HSI") testified for the government.  His investigation into suspected child pornography led to William Noonan, who had previously been convicted of a sexual offense against a 14-year-old boy.  This investigation led to the discovery of photographs of Noonan, Barry, and one or more of Barry's two adopted children, all nude.  Noonan was indicted as a codefendant in this case and pleaded guilty before trial.  Barry testified at the trial.

Based on careful consideration of the record, including the testimony and exhibits, the parties' arguments, and the relevant law, the court enters the following findings of fact and conclusions of law under Rule 23(c).  Based on these findings and conclusions, the court finds the

defendant, David Morse Barry, guilty of the four counts charged in the indictment.

## I.     Findings of Fact[1]

### A.     Background

Barry was born in 1958.  After one semester of college, he joined the United States Air Force in 1979, serving as a computer operator.  He was honorably discharged and moved to Fort Worth, Texas.  In 1993, he moved to Wichita Falls, Texas.  In 2004, Barry contacted Texas Child Protective Services ("CPS") about whether he and his life partner, Mark P., could become foster parents.  The men took CPS classes to become eligible.

In December 2005, Barry and his partner started fostering two brothers, R.B., born in September 2003, and O.B., born in October 2004.  The boys were "developmentally delayed" in that their motor skills and speech lagged behind children of similar ages. After eight months, Barry and his partner decided on adoption.  Because they could not legally marry, they could not both have parental rights.  On April 27, 2007, Barry adopted R.B. and O.B.  (Govt. Ex. 27).

 Around 2008 or 2009, Barry began visiting websites for those interested in nudism.  One such website was "truenudist.com."  Barry registered for the site and communicated with other site users.  Barry testified that he chatted with people on truenudist.com, including some who asked "creepy" questions about Barry and his children.  This website did not feature photographs of naked children.

Through the website, Barry began "chatting" with two men, William Noonan and Tim Whittington.  Noonan had been convicted in 1998 of sexually molesting a 14-year-old boy and was

---

[1]  To the extent any finding of fact is a conclusion of law, it is entered as both.  To the extent any conclusion of law is a finding of fact, it is entered as both.

a registered sex offender. Barry testified that he did not know about Noonan's prior conviction until the investigation leading to this indictment, and there is no evidence showing otherwise.

Barry's relationship with Noonan quickly developed. Barry characterized it as being "as close as two people can be." He and Noonan communicated almost every day, using the telephone, Microsoft's MSN Messenger or Windows Live Messenger instant-messenger programs,[2] or voice-over-internet programs such as Skype for video chats.[3]

Barry testified that most of his communications with Noonan and others were not about sexual topics and did not express a sexual interest in male children. Barry testified that he and Noonan, and others with whom he had internet chats, communicated about such "everyday" topics as music, food, and child-rearing. A log of chats between Barry and Noonan and others show that the conversations were not so limited. Instead, the chats covered sexual topics and included sexually explicit references about children. Barry's testimony that the chats consisted only of "everyday" talk about shared interests in nudism and child-rearing is not credible.

After communicating with Noonan for about six months, Barry traveled to Houston with R.B. and O.B. around May 31, 2010. They stayed with Noonan at his home. The visit lasted five days. A number of photographs showing various combinations of Noonan, Barry, and the two children, all nude, were taken during this visit. The photographs were taken with Noonan's camera

---

[2] MSN Messenger and Windows Live Messenger are different iterations of the same program. The program is referred to as "MSN Messenger."

[3] Barry testified that he did not use Skype because it "crashed" his computer. Chappell's testimony and text chats recovered from Barry's laptop show that Barry did have video chats. In one conversation, Noonan asked Barry to "come on cam and talk to me while [I] cook," Barry replied, "maybe in a bit." (Govt. Ex. 7n). In another chat with an unknown user, Barry attempted to initiate a video chat after the two had talked about getting on "cam" to talk. (*See* Govt. Ex. 7m). There is no evidence of what was said or done during the Skype video chats because the program did not by default save video transmissions.

at his home and also at a barbeque at which Noonan and other men and boys, most if not all nude, were present.  (Govt. Exs. 4v, 4w).

Around June 17 or June 18, 2010, Barry, O.B., and R.B. made a second trip to Noonan's home in Houston.  Between the first and second visits, Barry and Noonan frequently communicated with each other.  The second visit lasted six days, during which a number of photographs of Noonan and the children were taken with Noonan's camera, in his home.  Noonan and the children were nude in the photographs.  During the visit, Barry went to a job fair, leaving the children with Noonan for around 45 to 60 minutes.   Barry was with Noonan and the boys the rest of the visit.

Barry and the children made a third trip to stay with Noonan in Houston from around December 26, 2010 to January 1, 2011.  Barry brought his own camera.  A number of photographs were taken during this visit, including photographs of various combinations of the children and Noonan.  Some of the photographs were taken with Noonan's camera, and some with Barry's.

Barry did not tell his life partner, Mark P., where he was staying or with whom during these trips.[4]  The photographs taken during the three Houston visits include many of R.B. and O.B. naked, with their genitalia exposed.  The boys were photographed in Noonan's bedroom, bathroom, living room, and kitchen.   Noonan appears naked with the boys in many of the photographs.   The government contends that many of the images meet the statutory definition of child pornography because they show either (1) "actual or simulated . . . sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal" or (2) "lascivious exhibition of the genitals or pubic area." 18 U.S.C. § 2256(2)(A).  As explained in detail below, the court finds and concludes that many of the images meet the second part of the statutory definition of child pornography.

---

[4]  By June 2010, Barry and his partner were estranged.

4

Barry disputes that the images are child pornography. He claims that they simply showed people being nude together, consistent with the nudist lifestyle he and Noonan followed. Barry testified that he began a nudist lifestyle because he thought it would facilitate the boys' development. The government disputed that contention, presenting evidence that Barry's life partner did not participate in the nudist lifestyle; that Barry concealed from his life partner not only the fact that he and the children were with Noonan on the trips to Houston, but also that Barry concealed the photographs taken on the visits, as well as other photographs of nude children; and that there was little or no evidence besides Barry's testimony that he was following a nudist lifestyle with his children except when he and the children visited Noonan. The only exception is a few photographs showing Barry and his boys painting and exercising in the nude in their Wichita Falls home.

Barry argues that the photographs were not child pornography because they merely reflected his nudist lifestyle. The court finds somewhat credible Barry's testimony that before he began communicating with Noonan, he was exploring some aspects of a nudist lifestyle. But the court does not find at all credible Barry's testimony that the photographs of himself or Noonan with O.B. or R.B., or of just the boys, merely expressed a nudist lifestyle. As described below, the evidence of naked children in this record satisfies the government's burden of proving that the images at issue were produced with the intent to elicit a sexual response in the viewer. Barry's testimony that the photographs are not child pornography because he was a practicing nudist is not credible.

Barry also disputed that he knew about any of the photographs other than the ones that included him. Barry testified that he did not know about the photographs showing Noonan with one or both children, or just the children, taken at Noonan's house. Barry testified he did not give

Noonan permission to photograph the children naked and did not know about such photographs. The government presented ample evidence that Barry was the most likely person to have taken some of the photographs showing Noonan and one or more of the boys naked.  The persons in the photographs were in positions and places that were not only sexually suggestive but that also made it highly unlikely that those individuals took the photographs or used the camera's timer to do so. The government also presented evidence that contradicted Barry's testimony that he had never seen the photographs and did not know that they existed.  Many of the photographs were found on Barry's own laptop computer, and  Barry sent some of these photographs to other people using his personal MSN Messenger account.

Some of the photographs saved on Barry's laptop hard drive were taken with Noonan's camera.  Barry testified that he was not the person who transferred images from Noonan's camera to the laptop.  The government presented evidence discrediting Barry's testimony.  The evidence showed that in an administrative proceeding before Children's Protective Services, Barry testified that he transferred photographs from Noonan's camera to his own laptop by taking the camera's memory card and inserting it into the laptop's media reader.

The government also presented evidence that many of the photographs showing Noonan nude with the children, admitted as Government Exhibits 4a–4z, 4hh, and 4ii, described below, were located on Barry's computer in two folders within folders labeled "Craig Houston" and "David & the Boys."  The creation dates of the photographs within these folders correspond to Barry and the children's trips to Noonan's home in Houston.

The government also presented evidence of photographs of an unidentified boy and man, nude, located in the Messenger cache on Barry's laptop.  The Messenger cache is a "hidden" folder

6

in which the computer stores images that a person using an instant-messenger program sent or received.  The images were sent and received using MSN Messenger under Barry's "wfglassman" account name, the same name he used for the internet chats.

The court finds and concludes, for the reasons set out in detail below, that many of the photographs the government presented meet the statutory definition of child pornography and that Barry took some of these photographs.  As to the photographs of child pornography that Barry did not himself take, he was aware of them and approved of them being taken.  Barry transmitted some of those photographs from his and Noonan's cameras to his own laptop computer, or he knew that they had been transmitted and saved on his laptop.  Barry sent some of the photographs to users with whom he chatted on MSN Messenger.  In addition, Barry knowingly received photographs that are child pornography of an unidentified boy and man, photographs in his laptop's Messenger cache. The court finds and concludes that the government has proved the elements of each offense beyond a reasonable doubt.

### B.    The Investigation

In 2011, Special Agent Chappell was working in HSI's Houston office, investigating computer-based crimes.  In January 2011, Chappell received information from the Dallas HSI office that Noonan was involved in producing and distributing child pornography.   Based on this information, Chappell obtained email and internet protocol addresses associated with Noonan.  One of the email addresses associated with Noonan was "wfglassman@hotmail.com."  Microsoft is the internet service provider of "hotmail" web-based email.  Chappell obtained information from Microsoft showing that the "wfglassman@hotmail.com" account belonged to a David Barry in Texas.  (Govt. Ex. 18).

7

Barry testified that he used the "wfglassman" hotmail account.  Besides using Microsoft's hotmail email service, Barry also testified that he used MSN Messenger to communicate with others through the "wfglassman" account and username.  There is no credible evidence that anyone other than Barry accessed the "wfglassman" hotmail account or used MSN Messenger under the username "wfglassman."

In February 2011, law-enforcement agents obtained search warrants and searched Barry's residence in Wichita Falls and Noonan's residence in Houston.  The agents seized Barry's Dell laptop computer and a Kodak digital camera.  Barry had purchased the laptop sometime after January 2008.  The laptop was manufactured in China.  Barry had received the Kodak camera as a gift in December 2010.  It too was manufactured in China.  Special Agent Chappell forensically examined the laptop and camera.

From Noonan's residence, Special Agent Chappell and HSI seized two computers: a silver Dell laptop with a Texas Longhorns sticker on the case, (Govt. Ex. 10), and a desktop computer, (Govt. Ex. 11).  The laptop was manufactured in Malaysia; the desktop computer's hard drive was manufactured in Thailand.  The agents also seized a black Casio camera containing a memory card. (Govt. Ex. 8).  The camera was manufactured in China.  Special Agent Chappell forensically analyzed Noonan's computers and camera.

C.    **The Images**

1.    **The Photographs on Barry's Laptop**

Special Agent Chappell "imaged" or copied Barry's laptop hard drive and forensically examined it using specialized software.  Chappell is, and was at the time, certified to use this technology.  His search revealed numerous photographs of Barry's children nude, including many

showing Noonan nude with the boys.  Government Exhibits 4a–4z, 4hh, and 4ii, described below, were located within a user account labeled "owner."  Within the "owner" user account were two folders: one labeled "Craig Houston," and one labeled "David & the Boys."  The "Craig Houston" folder contained subfolders named "Craig H" and "others."  The "David & the Boys" folder contained subfolders named "dor" and "new."  The creation dates of the photographs in these folders correspond to Barry's trips to Houston.

The government contends that some of these photographs are child pornography.  The following photographs were admitted as evidence.

- Exhibit 4a is a photograph showing Barry and Noonan sitting with Barry's children.  One child is sitting on Barry's lap; the other child is sitting on Noonan's lap.  Barry's left arm is around Noonan's shoulder.  Noonan's right arm is on the boy's chest and his left arm is around the boy's body, with his hand on the boy's pelvis.  The boys' genitalia are exposed.  This photograph was located in the Messenger cache of Barry's Dell laptop.  (Govt. Ex. 17c).  The government contends this image is child pornography.

- Exhibit 4b is a photograph of one of the Barry children in the bathtub.  The boy is naked, thrusting his pelvis out of the bath water, prominently displaying his genitals.  The boy's penis is not erect.  The metadata shows that this photograph was taken with Noonan's Casio camera.  This photograph was created on Barry's Dell laptop hard drive in the folder "David & the Boys" on June 18, 2010.  The same photograph was created in the Messenger cache of Barry's laptop on September 16, 2010 at 11:40:40 p.m.  (*See* Govt. Exs. 17b, 30).  The government contends this image is child pornography.

- Exhibit 4c is a photograph showing Noonan and one of Barry's children on a bed.  The child is naked with his penis tucked between his legs.  Noonan's hand is holding the boy's head.  Noonan is naked, but his penis is not exposed.  The photograph's metadata shows that it was taken with Noonan's Casio camera.  This photograph was created on Barry's Dell laptop hard drive in the folder "David & the Boys" on June 18, 2010.  The same photograph was created in the Messenger cache of the laptop on September 16, 2010 at 11:36:37 p.m.  (*See* Govt. Exs. 17c, 30).  The government contends this image is child pornography.

- Exhibit 4d is a photograph showing Noonan sitting on a bed with his legs crossed.  He is holding one of Barry's children upside down.  The child's head is just in front of, and very close to, Noonan's groin.  Noonan's left hand is in front of the boy's face.  The boy's buttocks are against Noonan's chest area.  The boy's legs are spread and over Noonan's shoulders.  Noonan's right hand is on the boy's pelvis, close to, but not quite touching, the

boy's genitals. This photograph was created on Barry's Dell laptop hard drive in the folder "Craig Houston" on June 13, 2010, a date Barry was not in Houston. The photograph's metadata shows that it was taken with Noonan's Casio camera. The government contends this image is child pornography.

- Exhibit 4e is a photograph of one of Barry's children sitting by himself on Noonan's couch. The boy's genitals are exposed. His penis is not erect. His right hand partly obscures his face. This photograph was created on Barry's Dell laptop hard drive in the folder "Craig Houston" on June 18, 2010. The photograph's metadata shows that it was taken with Noonan's Casio camera. The government contends this image is child pornography.

- Exhibit 4f is a photograph of Noonan and one of Barry's children in Noonan's bathroom. Both are naked. Noonan is behind the boy with his arms wrapped around the boy. They are partially bent over. Noonan's fingers are interlocking with some of the boy's fingers. The boy's genitals are exposed; his penis is not erect. Noonan's genitals are not visible, but his position shows that his pelvis was pressed against the boy's buttocks. This photograph was created on Barry's Dell laptop hard drive in the folder "David & the Boys" on June 18, 2010. This photograph was also located in the Messenger cache on Barry's laptop. (*See* 17d). The photograph's metadata shows that it was taken with Noonan's Casio camera. The government contends this image is child pornography.

- Exhibit 4g is a photograph of Noonan and one of the Barry children on the same bed shown in Exhibit 4d. Noonan's penis is exposed. The boy's arm is on or very near Noonan's scrotum. The boy's face is partially obscured by a picture he is holding in his right hand. The boy's genitals are not exposed. This photograph was created on Barry's Dell laptop hard drive in the folder "Craig Houston" on June 1, 2010. The photograph's metadata shows that it was taken with Noonan's Casio camera. The government contends this image is child pornography.

- Exhibit 4h is a photograph of Noonan and one of the Barry children on the couch. Noonan is naked and sitting upright. The child is lying across the couch with his left leg touching or right next to Noonan's genitals. Noonan's arm is wrapped under the boy's legs and Noonan's hand is holding the boy's left kneecap. This photograph was created on Barry's Dell laptop hard drive in the folder "Craig Houston" on June 18, 2010. The photograph's metadata shows that it was taken with Noonan's Casio camera. The government contends this image is child pornography.

- Exhibit 4i is a photograph of Noonan and one of the Barry children naked in a room at Noonan's residence. Noonan is standing on one leg. His penis is partially erect. The child is nude; his genitals are prominently exposed although his penis is not erect. This photograph was created on Barry's Dell laptop hard drive in the folder "Craig Houston" on June 18, 2010. The photograph's metadata shows that it was taken with Noonan's Casio camera. The government contends this image is child pornography.

10

- Exhibit 4j is similar to Exhibit 4i.  Exhibit 4j shows Noonan and one of the Barry children.
  Both are naked.  Noonan's penis is partially erect.  The boy's genitals are exposed and his
  penis is not erect.  This photograph was created on Barry's Dell laptop hard drive in the
  folder "Craig Houston" on June 18, 2010.  The photograph's metadata shows that it was
  taken with Noonan's Casio camera. The government contends this image is child
  pornography.

- Exhibit 4k is a photograph showing Noonan and one of the Barry children standing in
  Noonan's bathroom.  The picture prominently focuses on Noonan's flaccid penis. The naked
  child is in the background.  The boys genitals are not exposed in the photograph.  This
  photograph was created on Barry's Dell laptop hard drive in the folder "David & the Boys"
  on June 18, 2010.  The photograph's metadata shows that it was taken with Noonan's Casio
  camera. The government contends this image is child pornography.

- Exhibit 4l is a photograph showing Noonan and one of the Barry children, both naked, in
  Noonan's bed.  Noonan is hunched over with his buttocks facing the camera.  The child is
  also facing the camera with his genitals exposed.  His arm is resting on Noonan's lower torso
  and right buttock.  This photograph was created on Barry's Dell laptop hard drive in the
  folder "David & the Boys" on June 18, 2010.  The photograph's metadata shows that it was
  taken with Noonan's Casio camera.   The government contends this image is child
  pornography.

- Exhibit 4m is a photograph of Noonan and the two Barry children on Noonan's bed, all
  naked.  One boy is behind Noonan with his arms around Noonan's neck.  The other boy is
  in front of Noonan.  The genitals of the boy who is in front of Noonan are partially exposed.
  Noonan's arm is resting on the back and shoulder of the boy in front.  Noonan's genitals are
  not exposed.  This photograph was created on Barry's Dell laptop hard drive in the folder
  "David & the Boys" on June 18, 2010.  This photograph was also located in the Messenger
  cache on Barry's laptop.  (*See* CD containing images from the black Dell laptop's Messenger
  cache, Govt. Ex. 16).  The photograph's metadata shows that it was taken with Noonan's
  Casio camera. The government contends this image is child pornography.

- Exhibit 4n is a close-up photograph of Noonan and one of the Barry children.  The Barry boy
  appears to be naked, though his genitals and lower body are not in the picture.  The boy's
  face is obscured by a toy.  Noonan's head is in the foreground of the shot and is not touching
  the boy's body.  The photograph was created in the Messenger cache of Barry's Dell laptop
  on September 16, 2010 at 10:43:12 p.m, a date Barry was not in Houston.  (*See* Govt. Exs.
  17g, 30).  The metadata does not show with which camera this picture was taken.  The
  government contends this image shows child pornography.

- Exhibit 4o is a photograph of Noonan and one of the Barry children, both naked.  Noonan
  is standing in the foreground.  His penis is not erect.  The child is in the background facing
  away from the camera, with his buttocks prominently displayed.  This photograph was
  created on Barry's Dell laptop hard drive in the folder "David & the Boys" on June 18, 2010.

The photograph's metadata shows that it was taken with Noonan's Casio camera. The government contends this image is child pornography.

- Exhibit 4p is a photograph of the two Barry children sleeping. The boy on the left is naked. His right leg is extended to the side, fully exposing his genitals. His penis is not erect. The other boy is covered by a blanket. This photograph was created on Barry's Dell laptop hard drive in the folder "David & the Boys" on June 18, 2010. The photograph's metadata shows that it was taken with Noonan's Casio camera. The government contends this image is child pornography.

- Exhibit 4q is a photograph showing Noonan and one of the Barry children lying on the floor of Noonan's bedroom. Noonan and the boy are both naked and lying on their right sides. Noonan is just behind the boy. Noonan's arm is around the boy's midsection. Noonan is smiling at the camera. This photograph was created on Barry's Dell laptop hard drive in the folder "David & the Boys" on June 18, 2010. The photograph's metadata shows that it was taken with Noonan's Casio camera. The government contends this image is child pornography.

- Exhibit 4r is a photograph of Noonan and one of the Barry children lying on a bed. Noonan is lying on his back. The child is sitting up with his arm over Noonan's stomach displaying a picture. Noonan's genitals are prominently exposed; his penis is not erect. The child's genitals are not exposed. This photograph was created on Barry's Dell laptop hard drive in the folder "David & the Boys" on June 18, 2010. This photograph was also located in the Messenger cache on Barry's laptop. (*See* Govt. Ex. 17i). The photograph's metadata shows that it was taken with Noonan's Casio camera. The government contends this image is child pornography.

- Exhibit 4s is a photograph of Noonan and one of the Barry children lying on the bed. Both are nude. Noonan is looking at the camera. His genitals are exposed; his penis is not erect. His arm is wrapped around the child's torso. Noonan's hand is holding the left buttock of the child. This photograph was created on Barry's Dell laptop hard drive in the folder "David & the Boys" on June 18, 2010. The photograph's metadata shows that it was taken with Noonan's Casio camera. The government contends this image is child pornography.

- Exhibit 4t is a photograph of one of the Barry children lying next to a dog. The boy's genitals are partially exposed. The boy's penis is not erect. This photograph was created on Barry's Dell laptop hard drive in the folder "Craig Houston" on June 13, 2010. Barry was not in Houston on June 13. The photograph's metadata shows that it was taken with Noonan's Casio camera. The government contends this image is child pornography.

- Exhibit 4u is a photograph showing one of the Barry children lying next to a dog. The boy's face and torso are partially obscured. The boy's genitals are partially exposed; his penis is not erect. This photograph was created on Barry's Dell laptop hard drive in the folder "Craig Houston" on June 13, 2010, a date that Barry was not in Houston. The photograph's

metadata shows that this photograph was taken with Noonan's Casio camera. The government contends this image is child pornography.

- Exhibit 4v is a photograph showing Noonan, the two Barry children, and another boy standing in an inflatable swimming pool. This photograph was taken at the barbeque Barry attended during his first trip to Houston. Noonan and the children are naked. The Barry children's genitalia are not exposed. Noonan's and the other boy's genitalia are exposed. Their penises are not erect. This photograph was created on Barry's Dell laptop hard drive in the folder "Craig Houston" on June 1, 2010. It was also created in the "David & the boys" folder on June 18, 2010. The photograph's metadata shows that it was taken with Noonan's Casio camera. The government contends this image is child pornography.

- Exhibit 4w is a photograph showing Noonan, the two Barry children, and another boy in the inflatable pool. This photograph is similar to Exhibit 4v. The only difference is that the genitals of one of the Barry children—the one standing in the pool—are showing. There are no erect penises. This photograph was created on Barry's Dell laptop hard drive in the folder "Craig Houston" on June 1, 2010. It was also created in the "David & the Boys" folder on June 18, 2010. The photograph's metadata shows that it was taken with Noonan's Casio camera. The government contends this image is child pornography.

- Exhibit 4x is a photograph showing Noonan and one of the Barry children. The child's arms are wrapped around Noonan's neck. The child's genitals are partially exposed. Noonan's genitals are not exposed. This photograph was created on Barry's Dell laptop hard drive in the folder "David & the Boys" on June 18, 2010. The photograph's metadata shows that it was taken with Noonan's Casio camera. The government contends this image is child pornography.

- Exhibit 4y is a photograph of Noonan and one of the Barry children. Noonan is sitting upright on the couch. The child's head is resting in or very near Noonan's groin area. The child's genitals are exposed. Noonan's left hand is resting on the boy's chest. The same photograph was created in the Messenger cache of Barry's laptop on September 16, 2010 at 11:38:59 p.m. (*See* Govt. Exs. 17f, 30). The photograph's metadata shows that it was taken with Noonan's Casio camera. The government contends this image is child pornography.

- Exhibit 4z is a photograph of one of the Barry children standing in front of a television. The child is naked. The boy's genitals are exposed, though the lighting from the television makes his genitals difficult to see. This photograph was created on Barry's Dell laptop hard drive in the folder "Craig Houston" on June 18, 2010. The photograph's metadata shows that it was taken with Noonan's Casio camera. The government does not contend that this image is child pornography.

- Exhibit 4hh is a photograph showing Noonan and one of the Barry children nude on Noonan's couch. The boy's right foot is touching, or nearly touching, Noonan's flaccid penis. The boy's genitals are not exposed. This photograph was created on Barry's Dell

laptop hard drive in the folder "Craig Houston" on June 18, 2010.  The government does not contend that this image is child pornography.

• Exhibit 4ii is similar to Exhibit 4hh, with two differences.  First, in Exhibit 4ii, the Barry child's genitals are exposed; his penis is not erect.  Second, Noonan is holding the boy's right leg up to his mouth.  This photograph was created on Barry's Dell laptop hard drive in the folder "Craig Houston" on June 18, 2010.  The same photograph was created in the laptop's Messenger cache on September 16, 2010 at 11:38:21 p.m.  (*See* Govt. Exs. 17e, 30).  The government does not contend that this image is child pornography.

During its cross-examination of Barry, the government presented evidence of two additional

photographs found on Barry's laptop hard drive:

• Exhibit 32 is a photograph showing Noonan and the two Barry children in Noonan's bathtub.  All three are naked.  Noonan's legs are extended the full length of the tub.  One of the boys is sitting between Noonan's legs with his back and head pressed against Noonan's chest.  Noonan's right hand is on the boy's upper right thigh; Noonan's left hand is on the boy's upper left thigh.  The other Barry child is sitting in the bathtub facing Noonan and his brother.  A shower curtain is in front of Noonan's arm from the elbow to his shoulder, obscuring a tattoo of a cross that Noonan has on his left deltoid.  The photograph's metadata shows that it was taken with Barry's Kodak camera on December 28, 2010 at 9:00:36 p.m.  The government contends this image is child pornography.

• Exhibit 31 is a similar photograph showing Noonan and the two Barry children in Noonan's bathtub.  The position of Noonan and the two Barry children is similar to Exhibit 32.  Exhibit 31 is taken from a different angle or perspective as compared to Exhibit 32.  The picture of the cross on Noonan's deltoid is behind the shower curtain and no longer visible.  Unlike Exhibit 31, in which Noonan's hands are on the boys legs, in Exhibit 32, Noonan's hands are shown on the boy's groin.  Noonan appears to be touching the genitals of the Barry child sitting on Noonan's lap or sitting between Noonan's legs.  Another difference between Exhibit 32 and Exhibit 31 is that the shower curtain in Exhibit 31 is pushed closer to the wall, exposing Noonan's entire left arm, including the cross tattoo.  This picture was taken with Barry's Kodak camera at 9:01:01 p.m.—27 seconds after Exhibit 32 was taken.  The government contends this image is child pornography.

Exhibits 31 and 32 were located on Barry's laptop hard drive in the subfolder "my pics,"

which was located within the folder "Favorites."  This was a user-created folder separate from the

"Craig Houston" and "David & the Boys" folders.

14

### 2.    Images on Noonan's Casio Camera

Special Agent Chappell analyzed Noonan's camera's memory card and found naked photographs of the Barry children and Noonan.  These images were not on Barry's Dell laptop.  They were admitted as Government's Exhibits 9b–9k.

- Exhibit 9b is a photograph showing the children standing at or near Noonan's kitchen sink.  One child is washing something in the sink with his back to the camera.  The other child is facing the camera.  The child facing the camera is nude and his genitals are fully exposed.  His penis is not erect.  Neither Barry nor Noonan is in the picture.  The government contends this image is child pornography.

- Exhibit 9d is a close-up photograph of one of Barry's children.  The child is fully nude and his face is partially obscured.  His genitals are exposed and centered in the shot.  His penis is not erect.  Neither Barry nor Noonan is in the picture.  The government contends this image is child pornography.

- Exhibit 9e is a photograph showing one of Barry's children nude and lying on a couch.  A red blanket partially covers the child's upper torso.  The child is nude from his mid-section to his feet.  His genitals are exposed.  His penis is not erect.  Neither Barry nor Noonan is in the picture.  The government contends this image is child pornography.

- Exhibit 9f is a photograph of Noonan sitting on a bed and one of Barry's sons sitting on the floor near Noonan's dog.  Noonan is in the foreground of the shot.  The Barry child is in the background.  The child is naked but, because of shadowing, his genitals are not visible.  The government contends this image is child pornography.

- Exhibit 9g is a photograph showing one of Barry's children standing in Noonan's house.  The child is nude.  The boy's hand partially obscures his genitals.  The government contends this image is child pornography.

- Exhibit 9i is a photograph of Noonan lying on a bed with his back against the headboard.  Noonan is holding one of the Barry children between his legs, and his arms are wrapped around the boy from behind.  Both Noonan and the child are naked.  Their genitalia are not exposed.  The government contends this image is child pornography.

- Exhibit 9k is a picture of one of Barry's children on Noonan's couch.  As in Exhibit 9e, the child is shown lying near a red blanket.  His whole body is exposed to the camera except for his left arm, which is covered by the red blanket.  The boy's genitals are exposed; his penis is not erect.  The government contends this image is child pornography.

### D.   The Issue of Barry's Knowledge that Photographs Existed

Barry testified that other than Exhibit 4a, a photograph in which Barry is pictured,  he was not aware that Government Exhibits 4a–4ii, 31, 32 had been taken or that they were saved in his laptop's hard drive or in the laptop's Messenger cache.   He also denied knowledge of the existence of most of the photographs located on the memory card of Noonan's camera, Government Exhibits 9b–9k.  The court finds that Barry's testimony is not credible.  The court finds that Barry took some of the photographs himself and that others were taken with his knowledge and approval.  The court also finds that Barry knew about the photographs stored on his laptop's hard drive.

Barry testified that on the trips to Houston, he left R.B. and O.B. alone with Noonan for at most 45 to 60 minutes, while he visited a job fair.  Barry testified that when he left the house for the job fair, he saw Noonan take the boys to a park to fly kites.  The large number of photographs of Noonan and the boys and the different locations where they were taken— some in a bedroom, some in a bathtub, some in a kitchen, some on a couch, some on the floor— could not have all been taken in one 45 to 60 minute session.

Barry testified that even if he was in Noonan's house when the photographs were taken, he did not know about them.  He explained that he may have been showering or preparing a meal and not in the room with Noonan and the children when the photographs were taken.  Barry's testimony is not credible.  Noonan lived in a small house.  Many of the photographs of Noonan and the Barry children were taken in rooms with the doors open.  (*See, e.g.*, Govt. Ex. 4o).  There is no evidence that the person taking the photographs tried to conceal that they were being taken.  Barry testified that he "watched the boys closely," which further discredits his claim that he did not know the photographs existed.  The court finds and concludes that Barry knew of the photographs, including

those Special Agent Chappell found on the memory card of Noonan's Casio camera.  These included Government Exhibits 9b, 9d, 9e, 9f, 9g, 9i, 9k.

The evidence shows that some of the photographs of Noonan with one or both boys were taken by Barry.  The two photographs of Noonan together with the children in the bathtub in Noonan's house make this particularly clear.   (Govt. Exs. 31, 32).  After the government showed these images to Barry during cross-examination, he claimed that he was unaware of them and argued that they may have been taken by Noonan or the children, using the camera's timer function.  Barry speculated that the camera could have been mounted on a flexible tripod attached to shelves on the bathroom wall.

Barry's testimony is not credible.   Under Barry's theory, during the approximately 27 seconds that elapsed between the first and second photographs, one of the people in the bathtub would have had to: (1) get out of the tub; (2) move the camera; (3) move the shower curtain; and (4) get back into the tub and position himself in the same basic position as the first shot.[5]  This sequence of events is highly unlikely.  There is no evidence that the photographs were taken using a flexible tripod.  Special Agent Chappell testified that the search of Noonan's house did not turn up a flexible tripod and that the agents would have seized and retained a tripod if one had been found.  The court finds that Barry took the photographs admitted as Government Exhibits 31 and 32.

Barry's testimony that he was unaware of the existence of Government Exhibits 31 and 32 was further undercut by evidence that the two photographs were saved in a subfolder on Barry's laptop named "my pics."  The "my pics" subfolder was located within a folder named "Favorites."  The "my pics" subfolder was a user-created folder, not a default folder for the Windows operating

---

[5]  The government stated that there could have been a 40-second gap between the two photographs.  If the gap between the photographs was 40 seconds, the court's conclusion would be the same: the court would still find that Barry took the photographs admitted as Government Exhibits 31 and 32.

system installed on Barry's laptop.  That is, the computer user had to create this folder and direct that image files be saved there.  The "my pics" subfolder also contained Defense Exhibits 27 and 28, photographs of O.B. and R.B. nude and playing an exercise game designed for Nintendo's Wii video-game system.  Barry testified that he was aware that these photographs were taken and were on his computer, yet denied knowledge of Government Exhibits 31 and 32, even though they were saved and stored in the same subfolder.  Barry's testimony that he was not aware of Government Exhibits 31 and 32 is not credible.

Barry also testified that Government Exhibits 31 and 32, as well as other photographs, may have been taken by one of the Barry children operating the timer mechanism.  That testimony is both speculative and not credible.  The ages of the children, and the absence of any credible evidence that they knew how to operate the timer, provide no support for Barry's speculation.  Contrary to Barry's testimony, most, if not all, of the photographs were taken while Barry was in Noonan's residence.  As to the photographs taken in that residence, if Noonan was in a photograph and Barry was not, either Barry took the photograph or one of the children did so, with Barry's knowledge.

Other images found on Barry's laptop also undermined his testimony that he did not know the photographs existed and did not know that they were saved on his laptop.  Special Agent Chappell's forensic examination of Barry's laptop found over a dozen images in the laptop's Messenger cache.  The Messenger cache is a default folder for images sent or received via an instant-messenger program.  In this case, the images were sent or received using MSN Messenger under Barry's "wfglassman" account.  For the version of MSN Messenger that Barry was using in 2010, before an image sent through the Messenger program was rendered as a visual image on the recipient's computer screen, the recipient had to "accept" the image.  Similarly, for a user to send

an image through MSN Messenger, the user had to purposefully attach an image that had already been saved to the computer's hard drive or was on some type of media that the computer could access. Chappell credibly testified that the forensic evidence proved that Barry had accepted and viewed the images of the unknown child shown in Government Exhibits 4aa–4ff.

Barry testified that these images could have been automatically generated on his screen and created in the Messenger cache because he was using a version of MSN Messenger that automatically displayed any visual images that a user sent. Chappell credibly testified that the MSN Messenger version on Barry's computer did not function as Barry described. There was no credible evidence that Barry used a prior version of the software that rendered images on the screen without the recipient's affirmative acceptance.

Chappell credibly testified that Barry sent through MSN Messenger images of his children in the nude, some showing just the children and others showing Noonan with the children. The images had been saved on Barry's laptop's hard drive. These images included Government Exhibits 4b, 4c, 4n, 4y, and 4ii. They were created on Barry's laptop's hard drive in June 2010 and created in the Messenger cache in September 2010. Barry saved the images on his computer in June and distributed them in September using the MSN Messenger program.

Government Exhibit 4b illustrates this. Government Exhibit 4b shows one of the Barry children in the bathtub, thrusting his pelvis towards the camera and prominently displaying his genitals. The image was saved on Barry's laptop hard drive in the "David & the Boys" folder on June 18, 2010. The same image was created in the Messenger cache on September 16, 2010. (*Compare* Govt. Ex. 4b (image saved in the "David & the boys folder") *with* Govt. Ex. 17b (same image saved in the computer's Messenger cache); Govt. Ex. 30 (noting the creation dates)). On

19

September 16, Barry was not in Houston and was not with Noonan.  There is no credible evidence that the Barry children knew how to access and send images through MSN Messenger.  There is no credible evidence that on September 16 any person other than Barry accessed his computer and used his MSN Messenger account.

Further evidence that Barry knew of the images of his naked children on his laptop is shown by a partially recovered chat from December 31, 2010 between Barry, using the "wfglassman" username, and "nudemac."  (*See* Govt. Ex. 7e).  During this less than four-minute chat, Barry told "nudemac" that "I will get a pic for you" and then said "see my boys?"  A few seconds later, Barry said "see my boys," "nudemac" said "how cute."  "Nudemac" then warned Barry to "be careful [a]bout sending naked pics of kids" because it was illegal.  Barry responded, "I know," wrote that the picture was just for "nudemac," and then asked "nudemac" not to show the picture to anyone.  Barry wrote that he "wont [*sic*] be sending [pictures] after tomorrow."  In a later part of the recovered chat, "nudemac" told Barry "guess the older one will have to be the foreskin bearer for the family."  "Nudemac's" reference to one boy as being circumcised and the other not further proves that Barry sent a naked picture of his boys to "nudemac"; O.B. was circumcised while R.B. was not.[6]

The credible evidence proves beyond a reasonable doubt that Barry took the photographs or approved of them being taken and that Barry knew of the images found in the Messenger cache and the images on his laptop's hard drive, in particular the images saved in the "Craig Houston," "David & the Boys," and "my pics" folders.

---

[6] A different chat suggests that Barry sent naked photographs of his children to a user named "roxas13066." In the chat, Barry said that the "boy on the left of the pictures" needed to be circumcised. (*See* Govt. Ex. 7c).  Barry then asked roxas13066, "did you save the pics?"  Barry also stated during the chat that he closed the program's "photo share window."

### E.    The Issue of Barry's Intent to Create Child Pornography

Barry argues that the images the government contends are child pornography were not taken to create child pornography or to sexually exploit children. Instead, he argues that the images show only that he and his children, and Noonan, followed a nudist lifestyle. His testimony is contradicted by the lack of other evidence supporting a nudist lifestyle apart from time spent with Noonan; by other photographs showing the unidentified naked boy found on Barry's laptop; by the sexual references to children in internet chats Barry engaged in with others; by the circumstances in which the photographs at issue were taken; and by a video tape recording in which one of his children told CPS that Barry touched him inappropriately. The court finds that Barry's testimony that he was simply following a nudist lifestyle is not credible. To the contrary, Barry had a sexual interest in prepubescent children that is relevant to his intent to produce child pornography.

In addition to the photographs of the Barry children and Noonan in the Messenger cache of Barry's computer, that cache also contained seven images of an unknown naked prepubescent boy. In some of the images, the boy is with an unknown adult male, who is also naked. The court admitted these images as Government Exhibits 4aa–gg under Federal Rule of Evidence 414.

- Exhibit 4aa is a photograph showing the unknown boy in a bathtub. His pelvis is thrusting out of the water, exposing his genitals. The boy's penis is erect. The photograph prominently displays the boy' erect penis. This image was created in the Messenger cache on November 20, 2010.

- Exhibit 4bb is a photograph of the unknown boy sitting on a couch or chair. The boy is naked. His genitals are exposed; his penis is not erect. This image was created in the Messenger cache on November 20, 2010.

- Exhibit 4cc is a photograph of the unknown boy sitting on what appears to be an exercise bike. The boy's genitals are exposed; his penis is not erect. This image was created in the Messenger cache on December 18, 2010.

- Exhibit 4dd is a photograph showing an unknown adult male hugging the unknown boy. Both the boy and the man are naked with their genitalia exposed. Their penises are not erect. This image was created in the Messenger cache on November 20, 2010.

- Exhibit 4ee is a photograph showing the unknown boy and the unknown adult male outdoors. The adult male is lying on the ground and holding the boy between his legs. The boy's genitals are exposed; his penis is not erect. This image was created in the Messenger cache on November 20, 2010.

- Exhibit 4ff is a photograph of the unknown boy and the unknown male standing in a doorway. The adult male has his right arm around the boy's shoulder. Both are nude with their genitalia exposed. Their penises are not erect. This image was created in the Messenger cache on November 20, 2010.

- Exhibit 4gg is a duplicate of Exhibit 4ff.

In three of the images, (Govt. Exs. 4aa–4cc), only the boy is shown. In one of the photographs, (Govt. Ex. 4aa), the boy's penis is erect and the focal point of the photograph. Barry testified that he had not seen these photographs before he was investigated for child pornography. The court finds that this testimony is not credible. As noted above, the MSN Messenger program that Barry used required him to "accept" an image before the program visually rendered it on his screen. For there to be evidence of the images in his laptop's Messenger cache, Barry had to accept them. Morever, the images were created in the Messenger cache on November 20, 2010 and December 18, 2010, dates on which Noonan did not have access to Barry's laptop. There is no credible evidence that anyone besides Barry used the Messenger program on his laptop.

The fact that Barry accepted and received images of a naked prepubescent boy, including one image focusing on the boy's erect penis is evidence of Barry's interest in prepubescent children. Barry's sexual interest in prepubescent children is also shown in some of the recovered internet chats. One chat, from January 25, 2011, was between Barry, using his "wfglassman" username, and another user designated as "Unknown." (Govt. Ex. 7L). Barry begins the chat by discussing a man

22

who performed a massage on a grandfather (age 55), a father (age 32), and a son (age 11).  Barry said that the masseuse "wank[ed]" the grandfather and father when the massage was over and that the son thought that it was "cool to see his dad and grandfather [ejaculate]."  When Unknown said that it was a "very good experience for [the son] to be a part of," Barry responded, "yes it is."  Barry also commented on the size of the 11-year-old's penis and agreed that "it's neat to see young boys with big meat."  Barry stated that the masseuse would stimulate the 11-year-old son grandson's penis, that the boy enjoyed it, and that "all boys like to have their penis's [sic] played with."

Barry's sexual interest in prepubescent children is also evident in an interview R.B. gave to CPS in June 2013.  A video recording of the interview was received into evidence, without objection.  (Second Trial Stipulation, Docket Entry No. 82).  R.B. told the forensic interviewer that on three or four occasions, Barry had R.B. lie down on Barry's bed while Barry played with R.B.'s penis.  R.B. also stated that on multiple occasions Barry wanted R.B. to play with Barry's penis.  (Govt. Ex. 28a).  R.B. stated that Barry's partner was not home during these incidents and that O.B. was not in the bedroom.  Barry did not dispute that he touched R.B.'s penis.  Barry testified that he did so to determine if R.B. was suffering from phimosis, a medical condition in which the foreskin on the penis does not expand, making it painful and difficult to urinate.  Barry testified that R.B. had been diagnosed with, and was treated for, phimosis.  But Barry's explanation does not explain R.B.'s statements that Barry asked R.B. to touch Barry's penis; that Barry, and not his partner, was the one who "played" with R.B.'s penis; and that Barry did so only when his partner was absent.

Barry's explanations are not credible.  The court finds that Barry had a sexual interest in prepubescent male children.  This further supports the finding that Barry knew about the images of Noonan and the Barry children; knew that they were on his laptop's hard drive and in the Messenger

cache; and that the images were produced with the intent to elicit a sexual response in the viewer.

**F.    The Issue of Whether the Images Meet the Statutory Definition of Visually Depicting a Minor Engaging in Sexually Explicit Conduct**

Barry is charged with two counts of conspiracy to commit sexual exploitation of children, in violation of 18 U.S.C. § 2251(a), (e)—one count for each of his children, O.B. and R.B. Title 18 U.S.C. § 2251(a) makes it a crime to employ, use, or induce a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction. To find Barry guilty of the charges in the indictment, the government had to prove beyond a reasonable doubt that:

(1)    R.B. and O.B. were minors when the images were made;

(2)    Barry employed, used, or induced O.B. and R.B to engage in sexually explicit conduct;

(3)    Barry acted with the purpose of producing a visual depiction of such sexually explicit conduct; and

(4)    the visual depiction was produced using materials that were mailed, shipped, or transported using any means or facility of interstate commerce, including by computer.

18 U.S.C. § 2251(a); *see also Fifth Circuit Pattern Jury Instructions* 2.82A.[7]

**1.    Whether O.B. and R.B. Were Minors**

The government had to prove beyond a reasonable doubt that R.B. and O.B. were under the age of 18 when the crimes were committed. The court finds that the government has proved this element beyond a reasonable doubt. R.B. was born in September 2003; O.B. was born in October 2004. When the photographs were taken, R.B. was six and O.B. was five. Barry does not dispute

---

[7] In conspiracy cases, "venue is proper in any district where the agreement was formed or where an overt act occurred." *United States v. Thomas*, 690 F.3d 358, 369 (5th Cir. 2012) (quoting *United States v. Garcia Mendoza*, 587 F.3d 682, 686 (5th Cir. 2009)). The photographs at issue were taken at Noonan's residence in Houston, within the Southern District of Texas. Barry did not challenge venue.

that both children were minors when the photographs were taken.

**2.    Whether Barry Used, Employed, or Induced O.B. and R.B. to Engage in Sexually Explicit Conduct**

The government had to prove beyond a reasonable doubt that at least one image of each child was child pornography; that is, it showed sexually explicit conduct. If the photographs do not show sexually explicit conduct, the government cannot establish an essential element of its case, regardless of Barry's or any coconspirator's intent in taking the photographs.

"Sexually explicit conduct" means (1) "actual or simulated . . . sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal" or (2) "lascivious exhibition of the genitals or pubic area." 18 U.S.C. § 2256(2)(A). The government contends that some of the photographs admitted as evidence show simulated sexual intercourse or lasciviously exhibit the genitals, or both.

**I.    Simulated Sexual Intercourse**

The government contends that Government Exhibits 4d, 4f, 4g, 4n, 4s, 31 and 32 show simulated sexual intercourse. The Supreme Court clarified that the meaning of "simulated" sexual intercourse is "sexual intercourse that is explicitly portrayed" such that the "portrayal *must* cause a reasonable viewer to believe that the [participants] actually engaged in that conduct on camera," even though sexual intercourse did not occur. *United States v. Williams*, 553 U.S. 285, 297 (2008) (emphasis added). Though *Williams* interpreted 18 U.S.C. § 2252A, not § 2251, the definition of simulated sexual intercourse is the same for both sections. The *Williams* interpretation of the meaning of simulated sexual intercourse in § 2252A applies to the meaning of the term in § 2251.

The government's contention that Government Exhibits 4d, 4f, 4g, 4n, 4s, 31 and 32 depict simulated sexual intercourse overstates the conduct that meets the definition of simulated sexual intercourse. Those images do not cause a reasonable viewer to believe that Noonan was engaged

in sexual intercourse (including genital-genital, oral-genital, anal-genital, or oral-anal) with any of the Barry children. Nor do the images cause a reasonable viewer to believe that the children were engaging in sexual intercourse with each other.

In Government Exhibit 4d, Noonan is holding one of the Barry children upside down. Though the boy's head is near Noonan's groin area, the child is not facing Noonan's genitals; instead, the child is looking at the camera. If the boy's head were touching Noonan's genitals, it would have been the back of the boy's head, not his mouth. Noonan's mouth is clearly away from the boy's genitals. The photograph does not depict simulated sexual intercourse.

In Government Exhibit 4f, Noonan is standing behind one of the Barry children, hugging him, so that the boy's buttocks are just in front of Noonan's genitals. A reasonable viewer, however, could conclude that Noonan was hugging the boy closely, not penetrating him or masturbating against him. Because the photograph is open to multiple interpretations, one of which does not depict sexual intercourse, the photograph does not depict simulated sexual intercourse. *See Williams*, 553 U.S. at 297 (stating that the "portrayal must cause a reasonable viewer to believe that the [participants] actually engaged in [sexual intercourse] on camera").

In Government Exhibit 4g, Noonan is on his back lying on a bed next to one of the Barry children. The boy's right elbow is close to or touching Noonan's scrotum. But the child's mouth, genitals, and anus are not near Noonan's penis, which was flaccid. A person viewing this photograph could not reasonably conclude, much less necessarily find, that it shows the subjects simulating any of the forms of sexual intercourse outlined in 18 U.S.C. § 2256. The photograph does not depict simulated sexual intercourse.

Government Exhibit 4n is a close-up photograph of Noonan's head and one of the Barry

children.  The government argued that the image simulated Noonan performing oral sex on the boy.

It is unclear from the photograph, however, if Noonan's head or mouth is touching the boy's body,

much less the boy's genitals.  The position of Noonan's head in the photograph suggests that if his

mouth is touching the boy's body (which is unclear), it is closer to the boy's midsection than to the

boy's genitals.  The image does not require a reasonable person to conclude that Noonan was

performing oral sex on the boy.  The photograph does not depict simulated sexual intercourse.

In Government Exhibit 4s, Noonan is on his bed and lying on his back with his genitals

exposed.  His arm is around one of the Barry children.  Noonan's hand is on the boy's buttocks.  The

fact that a person's hand is on another's buttocks is not a simulation of sexual intercourse within the

statute.  This photograph does not depict simulated sexual intercourse.

In Government Exhibits 31 and 32, Noonan is in his bathtub with the two Barry children.

These photographs are capable of multiple interpretations and do not require a reasonable viewer

to believe that Noonan was having sexual intercourse with either child.  *See Williams*, 553 U.S. at

297.  This photograph does not depict simulated sexual intercourse.

The court concludes that none of the photographs the government submitted depict simulated

sexual intercourse.

### ii.       Lascivious Exhibition of the Genitals

The government argued that most, but not all, of the photographs admitted into evidence are

child pornography because they show children lasciviously exhibiting their genitalia.   The

government argued that Government Exhibits 4a–4p, 4r–4z, 9b–9g, 9i, 9k, 31, and 32 met this

definition of child pornography.  The government included in this category Exhibits 17a–17h, which

are the duplicate images found in the Messenger cache of Barry's laptop.  The issue is whether the

government proved, beyond a reasonable doubt, that one or more of these images meets the statutory definition for each Barry child.

### a.    The Applicable Law

Section 2256 does not define "lascivious exhibition." *See United States v. Villard*, 885 F.2d 117, 121 (3d Cir. 1989) ("Whatever the exact parameters of 'lascivious exhibition,' we find it less readily discernable than the other, more concrete types of sexually explicit conduct listed in section 2256(2)."); *United States v. Hill*, 322 F. Supp. 2d 1081, 1084 (C.D. Cal. 2004) ("Lasciviousness is an elusive concept, and courts have struggled to develop a test for identifying it." (footnote omitted)); *but see United States v. Frabizio*, 459 F.3d 80, 85 (1st Cir. 2006) ("The statutory standard needs no adornment.").

Courts in the Fifth Circuit and other circuits apply the six-factor test from *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986). *United States v. Steen*, 634 F.3d 822, 826 (5th Cir. 2011); *United States v. Grimes*, 244 F.3d 375, 380 (5th Cir. 2001); *but see Steen*, 634 F.3d at 828–830 (Higginbotham, J., concurring) (criticizing the *Dost* factors). These six factors are:

1)    whether the focal point of the visual depiction is on the child's genitalia or pubic area;

2)    whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;

3)    whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;

4)    whether the child is fully or partially clothed, or nude;

5)    whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; [and]

6)      whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

*Dost*, 636 F. Supp. at 832.

The *Dost* factors are "not exhaustive, and no single factor is dispositive."  *Steen*, 634 F.3d at 827 (quoting *Grimes*, 244 F.3d at 380).  "Any determination of lasciviousness 'will have to be made based on the overall content of the visual depiction.'"  *Id.* (quoting *Dost*, 636 F. Supp. at 832); *see also United States v. Wallenfang*, 568 F.3d 649, 657 (8th Cir. 2009); *United States v. Banks*, 556 F.3d 967, 980 (9th Cir. 2009); *United States v. Frabizio*, 459 F.3d 80, 87 (1st Cir. 2006) (explaining that the *Dost* factors "are neither comprehensive nor necessarily applicable in every situation," and that "[t]he inquiry will always be case-specific." (internal quotation marks and citations omitted; brackets in the original)); *United States v. Moore*, 215 F.3d 681, 686 (7th Cir. 2000).

Though most circuits apply the *Dost* factors, their application has been criticized.  The *Dost* factors "have fostered myriad disputes that have led courts far afield from the statutory language." *Frabizio*, 459 F.3d at 88.  One area of dispute is "how many of the factors must be present for a depiction to qualify as 'lascivious.'"  *Id.* (comparing differences between the Tenth Circuit and the Third Circuit).  Critics of the *Dost* factors argue that the factors are underinclusive and overly generous to the defendant.  *United States v. Rivera*, 546 F.3d 245, 251 (2d Cir. 2008); *see also United States v. Wiegand*, 812 F.2d 1239 (9th Cir. 1987) (stating that application of the *Dost* factors "was over-generous to the defendant"); *Frabizio*, 459 F.3d at 88 (expressing concern that "the *Dost* factors will be used to inappropriately *limit* the scope of the statutory definition") (emphasis in the original); *Steen*, 634 F.3d at 828 & n.1 (Higginbotham, J., concurring) (noting the concerns expressed in *Rivera* and *Wiegand*).

Courts have noted that the sixth *Dost* factor—whether the visual depiction is intended or designed to elicit a sexual response in the viewer—is particularly relevant in production cases. *See Rivera*, 546 F.3d at 252. The First Circuit stated that the sixth factor is "the most confusing and contentious of the *Dost* factors." *United States v. Amirault*, 173 F.3d 28, 34 (1st Cir. 1999). It explained that this confusion is caused because the sixth factor does not provide guidance to answer the following questions:

> Is this a subjective or objective standard, and should we be evaluating the response of an average viewer or the specific defendant in this case? Moreover, is the intent to elicit a sexual response analyzed from the perspective of the photograph's composition, or from extrinsic evidence (such as where the photograph was obtained, who the photographer was, etc.)?

*Id.*

The circuit courts do not uniformly apply the sixth *Dost* factor. The circuits are split on whether a court should limit its review to the image itself, the "four-corners test," or whether the court should consider the context in which the image or related images were produced. The Third Circuit and possibly the First Circuit, the first courts to address the issue, limit the analysis to the four corners of the image. *See Villard*, 885 F.2d at 122 (holding, in the context of a sufficiency-of-the-evidence challenge to a jury verdict, that "[w]e must . . . look at the photograph, rather than the viewer," because if "we were to conclude that the photographs were lascivious merely because [the viewer] found them sexually arousing, we would be engaging in conclusory bootstrapping rather than the task at hand—a legal analysis of the sufficiency of the evidence of lasciviousness"); *Amirault*, 173 F.3d at 34 (expressing doubt that a factfinder should consider "the context surrounding the creation and acquisition of the photograph").

By contrast, the Second, Sixth, and Tenth Circuits also consider the context in which the

images were produced. *See United States v. Brown*, 579 F.3d 672, 682 (6th Cir. 2009) ("We, like our sister circuits, have adopted a test that considers whether 'a visual depiction is *intended* or designed to elicit a sexual response in the viewer.'" (quoting *Dost*, 636 F. Supp. at 832 (emphasis added))); *Rivera,* 546 F.3d at 250 ("[T]hese images have context that reinforces the lascivious impression. [The victim] testified that Rivera arranged the poses and took the photographs. . . .  A reasonable jury could therefore find that Rivera composed the images in order to elicit a sexual response in a viewer—himself.  These images are unquestionably 'lascivious' material[.]"); *United States v. Wolf*, 890 F.2d 241, 247 (10th Cir. 1989) (noting that "lasciviousness is not a characteristic of the child photographed but of the exhibition that the photographer sets up for an audience that consists of himself or likeminded individuals").  By considering the context in which the image was taken, courts can "resolve close judgment calls about whether an image inadvertently focuses on a child's genitalia, or whether [the image] is intended to elicit a sexual response in the viewer." *Brown*, 579 F.3d 684.  As the Second Circuit stated, in some situations, it is the "context that reinforces the lascivious impression." *See Rivera*, 546 F.3d at 250.

The courts recognize "countervailing" policy considerations for each approach. *See Brown*, 579 F.3d at 683.  By placing too much emphasis on the subjective intent of the person producing the image, "a seemingly innocuous photograph might be considered lascivious based solely upon the subjective reaction of the person who is taking or viewing it." *Id.*  As the First Circuit noted, if the image taker's "subjective reaction were relevant, a sexual deviant's quirks could turn a Sears catalog into pornography." *Amirault*, 173 F.3d at 34; *see also Rivera*, 546 F.3d at 252 (noting the concerns *Amirault* raised).  But ignoring the context in which the image was produced "inevitably fails to capture behavior that is 'intended' to exploit children." *Brown*, 579 F.3d at 683.   In light of these

31

competing concerns, the Sixth Circuit in *Brown* adopted a narrower version of the "context test" called the "limited context test." *Id.* This test "permits consideration of the context in which the images were taken, but limits the consideration of contextual evidence to the circumstances directly related to the taking of the images." *Id.* The factors to consider are "(1) where, when, and under what circumstances the photographs were taken, (2) the presence of other images of the same victim(s) taken at or around the same time, and (3) any statements a defendant made about the images." *Id.* at 683–84 (footnote omitted).

The Fifth Circuit has not clearly stated which test it follows. In *Steen*, the panel majority implicitly endorsed the context test. In applying the sixth *Dost* factor, the court cited a case from the Western District of Missouri that expressly looked at the context in which a video was produced to conclude that the video was not lascivious. *See Steen*, 634 F.3d at 828 (quoting *United States v. Johnson*, 719 F. Supp. 2d 1059, 1068 (W.D. Mo. 2010) *rev'd*, 639 F.3d 433 (8th Cir. 2011). But the concurrence, in addition to arguing against using the *Dost* factors, implicitly argued against using the context test, stating that consideration of context is contrary to congressional intent. *Id.* at 829.[8]

This court finds that consideration of the context in which the images were produced is most consistent with binding Fifth Circuit authority and is the more reliable way to determine lasciviousness, and is consistent with what can be gleaned about congressional intent. The context provides valuable information about the intent of the person who produced the image. As the Sixth Circuit noted, consideration of the context helps "resolve close judgment calls about whether an image inadvertently focuses on a child's genitalia, or whether [the image] is intended to elicit a

---

[8] Citing *Villard*, the Third Circuit case applying the four-corners test, the concurring opinion in *Steen* stated: "Congress did not make production of child pornography turn on whether the maker or viewer of an image was sexually aroused, and this *Dost* factor encourages both judges and juries to improperly consider a non-statutory element." *United States v. Steen*, 634 F.3d 822, 829 (5th Cir. 2011) (Higginbotham, J., concurring) (footnote omitted).

sexual response in the viewer." *Brown*, 579 F.3d at 684.  Examining only the four corners of an image, wholly divorced from the evidence as to context, would prevent a court from considering exculpatory evidence, such as evidence "show[ing] that the images are art or innocent family photographs," or whether, as Barry argues, innocent photographs of nudist lifestyle advocates. *Id.* at 683.  Concerns that relying on context too heavily could lead to absurd results because "[a] pedophile may be aroused by photos of children at a bus stop wearing winter coats" are minimized because "no single factor is dispositive."  *Steen*, 634 at 829 (Higginbotham, J., concurring); *id.* at 827 (majority opinion) (quoting *Grimes*, 244 F.3d at 380).  In the concurrence's example of the children at the bus stop with winter coats, while the sixth factor may weigh in favor of finding lasciviousness, the other five factors clearly do not, preventing the statute from sweeping too broadly.

The court analyzes the images and the parties' arguments in light of the photographs and the evidence of the context in which they were taken.

### b.    Analysis

### I.    Applying the *Dost* Factors

The court finds and concludes that certain of the photographs admitted into evidence depict lascivious exhibitions of the Barry children's genitalia and are child pornography.  The government has met its burden of proof as to Government Exhibits 4b, 4f, 4p, 9e, 9k, 31, 32.

Before examining the photographs individually, the court first observes that some of the *Dost* factors apply to most, if not all, the photographs the government claims depict lascivious exhibition of the children's genitals, as well as the men's genitalia, shown in some of the images.  Because the Barry children are nude in Government Exhibits 4b, 4f, 4p, 9e, 9k, 31, 32, the fourth *Dost* factor

weighs in favor of finding lasciviousness. Part of the third *Dost* factor—the appropriateness of the children's attire—is inapplicable because the children are naked. As to the fifth *Dost* factor—whether the photographs suggest sexual coyness or a willingness to engage in sexual activity—the Barry children's young ages minimize the benefit Barry might normally receive if the children were older and did not show sexual coyness or a willingness to engage in sexual activity. *See Brown*, 579 F.3d at 681 (stating that the fifth *Dost* factor "is not applicable given the age of toddlers" (citing *Dost*, 636 F. Supp. at 832)). In this case, the boys are not toddlers but are still young (5 and 6 years old) and appear quite willing to display their genitalia, including when a naked Noonan is shown holding or grasping the boys' upper thighs or groin area, right next to the genitals, or having his face right next to their exposed genitals.

The sixth factor, whether the photograph was taken with the intent to elicit a sexual response in the viewer, weighs in favor of finding lasciviousness. The court finds that Barry produced or approved of the production of the images depicting his children nude for the purpose of eliciting a sexual response in the person viewing the images. Barry's intent is demonstrated in part by the fact that he had a sexual interest in prepubescent boys.[9] His intent is also demonstrated by the photographs themselves.

As described in more detail below, the court finds and concludes that Government Exhibit 4b, the image of one of the Barry children thrusting his pelvis out of the bathtub water and exposing his genitals, depicts a lascivious exhibition of the child's genitals and is child pornography. This image was located in both the "David & the Boys" folder on Barry's laptop hard drive and in the laptop's Messenger cache. The image had been saved on Barry's laptop hard drive and Barry had

---

[9] The discussion about and finding that Barry had a sexual interest in prepubescent children is at pages 23–25.

distributed the image to a person with whom he was internet chatting. Barry had received another image showing child pornography through MSN Messenger—the image of the unknown prepubescent boy naked, with an erect penis. (*See* Govt. Ex. 4aa). Barry received other images of this same boy that also focused on the boy's genitals. (*See* Govt. Exs. 4bb, 4cc). Barry's receipt, retention, and distribution of child pornography is probative of his intent as to Government Exhibit 4b and as to other images "of the same victim(s) taken at or around the same time." *See Brown*, 579 F.3d at 683–84.

Barry's intent is also proved by the chats between himself and others, in which the subjects discussed were sexual in nature and focused on young boys. The chats included remarks by Barry, such as, "it's neat to see young boys with big meat." Barry also agreed with the statement by one user he was chatting with that "all boys like to have their penis's [sic] played with." (Govt. Ex. 7L). Other evidence of Barry's intent to use his children to elicit sexual responses in others is the December 31, 2010 chat with "nudemac." As noted earlier, this court found that Barry transmitted naked photographs of his children to "nudemac" during this chat, and that he and "nudemac" discussed the illegality of transmitting child pornography. *See supra* at 20. After Barry told "nudemac" that he would not send additional naked pictures of his children because he did not want to get in trouble, Barry invited "nudemac" to spend time with Barry and the children in person so that "nudemac" could see the children. (Govt. Ex. 7e ("[Y]ou can see them live when you come to visit.")).

Moreover, the video interview CPS conducted with R.B. is evidence of Barry's sexual interest in not only young boys in general, but his own child. In the video, R.B. told the interviewer that Barry played with R.B.'s penis. This court has found Barry's attempt to tie his handling of

R.B.'s penis to assessing a medical condition not credible.  *See supra* at 23.

Barry's testimony that the photographs of his children inadvertently focused on the children's genitals and were not intended to elicit a sexual response is not credible.  Many of the pictures prominently displayed the subjects' genitals.  Some photographs, for example the photograph of the Barry child thrusting his hips out of the water, were in exaggerated positions that further called attention to the genitals.  (*See* Govt. Ex. 4b).  The photographs showing Noonan and Barry together—photographs taken with the children present and likely operating the camera— and the photographs of Noonan and Barry with boys—likely taken with a timer—evidence an intent to elicit a sexual response in the viewer.  (*See* Govt. Exs. 4a, 9a).[10]

It does not matter whether Barry, Noonan, or one of the Barry children took the photographs for purposes of applying the sixth *Dost* factor.  This court has previously found that if Barry did not take the photographs of the boys, he knew that they were being photographed naked and he approved.  *See supra* at 20.  That is true of the photographs of the boys taken on the first visit to Noonan's home in Houston, and clearly true for the photographs taken on the second and third visits.

The court finds and concludes that the photographs in which Barry or Noonan were involved, whether as subject or photographer or sender or recipient, were intended to elicit a sexual response.

### ii.    The Individual Images

Analyzing the individual images leads the court to find and conclude that Government Exhibits 4b, 4f, 4p, 9e, 9k, 31, 32 are child pornography.

Government Exhibit 4b shows one of the Barry children in the bathtub thrusting his pelvis

---

[10]  In Government Exhibit 4a, Barry and Noonan are seated next to each other with the boys seated on their laps.  Barry's arm is around Noonan's shoulder.  Government Exhibit 9a is a similar photograph, but Barry's arm is resting on Noonan's upper thigh while Barry leans into Noonan's body.  The sexual nature of their relationship is also evidenced by their internet chats.  (*See* Govt. Ex. 7n).

out of the water with his legs spread.  The boy's genitals are exposed and a focal point, if not the focal point, of the photograph.  The first *Dost* factor weighs in favor of finding a lascivious exhibition of the child's genitals.  The position of the boy with his hips thrusting out of the bathtub and exposing his genitals is exaggerated, intended to focus the viewer's attention on the genitals. As to the sixth *Dost* factor, the court concludes that the photograph was intended to elicit a sexual response in the viewer.  In addition to being found on Barry's laptop hard drive, the photograph was also found in the laptop's Messenger cache, meaning, as described above, that Barry sent this photograph to at least one other person through MSN Messenger.  Barry received other images depicting child pornography through MSN Messenger, such as the unknown boy images.  (*See* Govt. Ex. 4aa–4ff).  The fact that Barry received child pornography through MSN Messenger and distributed the photograph of his child using the same means is one of the pieces of evidence leading this court to find and conclude that the photograph admitted as Government Exhibit 4b did not inadvertently focus on the Barry child's genitals and was instead produced with the intent to elicit a sexual response in the viewer.  This photograph shows a lascivious exhibition of the genitals and is child pornography within the meaning of 18 U.S.C. § 2251(a).

Government Exhibit 4f is a photograph showing Noonan standing behind one of the Barry children.  Noonan's arms are wrapped around the boy.  The boy's genitals are exposed, but the primary focus is Noonan's face and the boy's face.  The first factor weighs against a finding of lasciviousness.  The other factors, however, weigh strongly in favor of finding lasciviousness. Noonan's position right behind the child, with the boy's buttocks pressed against Noonan's groin, is sexual.  While the photograph is not enough to simulate sexual intercourse, it is nonetheless highly suggestive of sexually intercourse.  Noonan's arms are wrapped around the boy and his hands are

over the boy's hands.  This photograph, like Government Exhibit 4b, was found in Barry's laptop Messenger cache, meaning that Barry transmitted it to someone else.  The court finds and concludes that the photograph shows a lascivious exhibition of the genitals and is child pornography.

Government Exhibit 4p is a photograph showing the two Barry children sleeping on a makeshift bed on the floor.  One of the boys is nude, lying on his back with his right leg spread, exposing his genitals.  The boy is positioned to make his genitals the focal point of the photograph. The second *Dost* factor weighs in favor of a finding of lasciviousness.  Though the first two *Dost* factors weigh in favor of a finding of lasciviousness, they alone are not sufficient for the court to find a lascivious exhibition of the genitals.  If the context was a parent photographing his sleeping child, that context would weigh in favor of finding an "innocent family photograph[]."  *See Brown*, 579 F.3d at 684.  The context here is different.  The context in which the photograph was taken shows that the photograph was not an innocent family picture or a picture that inadvertently focused on the child's genitals.  The court finds and concludes that this photograph shows a lascivious exhibition of the genitals and is child pornography.

Government Exhibit 9e is a photograph substantially similar to Exhibit 4p.  The court's analysis is similar as well.  The court finds and concludes that this photograph shows a lasciviousness exhibition of the genitals.  Similar to Exhibit 4p, in Exhibit 9e, the Barry child is photographed nude on a couch or chair.  The boy's legs are spread, fully exposing his genitals.  The photograph does not focus exclusively on the boy's genitals, but his genitals at the center and are the focal point of the image.  As with Exhibit 4p, the court finds and concludes that the photograph shows a lascivious exhibition of the genitals, and was taken with the intent to elicit a sexual response in the viewer.  *See Rivera*, 546 F.3d at 252.

Government Exhibit 9k is a photograph of one of the Barry children on the same bed or couch that is pictured in Exhibit 9e. The photograph shows the boy, who is nude, from the lower thighs up. His legs are spread, making his exposed genitals a focal point. The court finds and concludes that the photograph shows a lascivious exhibition of the boy's genitals, was taken with the intent to elicit a sexual response in the viewer, and is child pornography.

Government Exhibits 31 and 32 are similar photographs showing Noonan and the two Barry children in Noonan's bathtub. The photographs were taken in December 2010 during Barry and his children's third trip to Houston. The children's genitals are not exposed, so the first *Dost* factor weighs against finding lasciviousness. The second factor, however, weighs heavily in favor of a finding of lasciviousness. The setting and the positions of Noonan and the Barry child closest to Noonan are sexually suggestive. The boy's buttocks are shown as pressed against Noonan's genitals. In Exhibit 31, Noonan's hands are touching or nearly touching the boy's genitals. As to context, while it is not sexually suggestive for young boys in the same family to have a parent in the bathtub with them, that is not the context of these two photographs. Instead, the naked adult man in the photograph, Noonan, is not a family member. His history with the children was limited. He had seen the children only during their two prior trips to Houston, about five months earlier. Noonan had a sexual interest in prepubescent boys. The photographs, and the context, lead the court to find and conclude that the images were taken with the intent to elicit a sexual response in the viewer. Both of these photographs are child pornography.

In sum, the court finds and concludes that Government Exhibits 4b, 4f, 4p, 9e, 9k, 31, 32 are visual depictions of lascivious exhibitions of genitalia and are child pornography. The government

has proved that Barry "used, employed, or induced" O.B. and R.B to engage in sexually explicit conduct.[11]

> ### G.     Whether Barry Acted, or Conspired with Noonan, for the Purpose of Producing a Visual Depiction of O.B. and R.B. Engaging in Sexually Explicit Conduct

The next element requires evidence proving beyond a reasonable doubt that Barry acted or conspired with Noonan "for the purpose of producing a[] visual depiction" of O.B. and R.B engaging in sexually explicit conduct.[12]  18 U.S.C. § 2251(a).  "For the purpose of" means that the defendant acted with the specific intent of creating visual depictions of sexually explicit conduct. *See United States v. Esch*, 832 F.2d 531, 536 (10th Cir. 1987).  This requirement means that "the defendant must know the character and content of the visual depiction.  Otherwise how could the defendant purposefully make a visual depiction of sexually explicit conduct."  *United States v. Reedy*, 632 F. Supp. 1415, 1422 (W.D. Okla. 1986).  "Producing" is defined to mean "producing, directing, manufacturing, issuing, publishing, or advertising." 18 U.S.C. § 2256.  The list of terms shows that  the definition of "produced" is not a technical definition.  *United States v. Poulin*, 631 F.3d 17, 22 (1st Cir. 2011).  The list "reflects Congress's intention to enact a broad definition of 'producing' that encompasses the varied means by which an individual might actively participate in the creation and distribution of child pornography."  *United States v. Fadl*, 498 F.3d 862, 867 (8th Cir. 2007).

---

[11]  Because the court has concluded that there are photographs of child pornography involving both R.B. and O.B., the court need not exhaustively analyze the remaining images the government contends are child pornography.

[12]  Under 18 U.S.C. § 371, a person may be convicted of conspiracy to commit the target offense if the government proves: (1) an agreement between two or more persons to pursue an unlawful objective; (2) the defendant's knowledge of the unlawful objective and voluntary agreement to join the conspiracy; and (3) an overt act by one or more of the members of the conspiracy in furtherance of the objective of the conspiracy. The government must prove the same degree of criminal intent as is necessary for proof of the underlying substantive offense.  In addition to proving an intent to further the unlawful objective, there must also be proof that the defendant acted willfully, that is, with the specific intent to do something the law forbids. *United States v. Njoku*, 737 F.3d 55, 63 (5th Cir. 2013).

The court finds and concludes that the evidence proves beyond a reasonable doubt that Barry acted for the purpose of producing a visual depiction of his children engaging in sexually explicit conduct.  Barry himself took at least two pictures—the pictures of Noonan and the Barry children in the bathtub—that are child pornography.  The act of taking pornographic photographs is sufficient to meet the statute's intent requirement.

As to the other photographs, while there is no direct evidence that Barry himself took them, there is sufficient evidence to prove beyond a reasonable doubt that he actively participated in their creation.  Barry brought the children to Houston to stay with Noonan at Noonan's home; Barry was in Noonan's home when the pictures were taken; the pictures were located on Barry's laptop hard drive; Barry sent some of the photographs through MSN Messenger; and Barry continued to bring the children to Houston and allow them to be photographed despite knowing about the pictures taken during the prior Houston trips.[13]  Barry was aware of and knew of the character and content of the photographs.  The government has proven beyond a reasonable doubt that Barry acted with the intent to further the production of child pornography.

### H.    Whether the Visual Depictions Were Produced Using Materials Transported in Interstate Commerce

The final element is a jurisdictional nexus between the crime and its instrumentalities.  The government may prove this by showing that the visual depictions were produced using materials that were mailed, shipped, or transported in foreign or interstate commerce.  18 U.S.C. § 2251(a); *see also Fifth Circuit Pattern Jury Instructions* 2.82A.  The government proved beyond a reasonable

---

[13]  Barry sent the pictures admitted as Government Exhibit 4b, 4c, 4n, 4y, 4ii through MSN Messenger on September 16, 2010.  Barry took the pictures of Noonan and the children in the bathtub, (Govt. Exs. 31, 32), in December 2010.  Thus, despite Barry's knowledge that nude pictures of the boys had been taken during the June trips to Houston, as evidenced by the distribution of the images in September 2010, Barry again traveled to Houston in December 2010 and photographed the children and allowed them to be photographed.

doubt that the cameras used to take the photographs that are child pornography were produced overseas and shipped and transported through foreign and interstate commerce.  Barry's Kodak camera and Noonan's Casio camera were both manufactured in China.  The computers on which the photographs were stored were shipped and transported through interstate commerce.  Barry's black Dell laptop hard drive was manufactured in China.  Noonan's laptop was manufactured in Malaysia, and the hard drive to his desktop computer was manufactured in Thailand.

The government has proven beyond a reasonable doubt that the depictions of child pornography were produced using materials that were shipped or transported in foreign or interstate commerce.  Barry does not dispute that the government has proven this element.

In sum, the court finds:

- Barry traveled with his children to Houston in May 2010, June 2010, and December 2010 to visit Noonan.

- During these visits, Noonan was photographed with Barry's children, all nude.  Barry was in some of the photographs of Noonan and one or more of the boys.  Other photographs taken during these visits showed the boys individually or together without the adults.

- Barry took the photographs or was aware and approved of them being taken.

- Images of Noonan and Barry's children were located in the "Craig Houston," "David & the Boys," and "my pics" folders on Barry's laptop computer hard drive.

- Barry was aware that the images were in the "Craig Houston," "David & the Boys," and "my pics" folders.

- Barry sent through MSN Messenger some of the images that were located in the "Craig Houston" and "David and & the Boys" folders, including Government Exhibits 4b, 4c, 4n, 4y, and 4ii.

- Barry received through MSN Messenger images depicting an unknown prepubescent boy, including one image depicting the boy with an erection.

- Barry has a sexual interest in prepubescent boys.

- R.B. and O.B. were under 18 when the photographs were taken.

- Barry was the legal guardian of O.B. and R.B. when the photographs were produced.

- Government Exhibits 4d, 4f, 4g, 4n, 4s, 31 and 32 do not depict simulated sexual intercourse.

- Government Exhibits 4b, 4f, 4p, 9e, 9k, 31, and 32 do depict sexually explicit conduct because they are visual depictions of lascivious exhibition of the genitals.

- Government Exhibits 4b, 4f, 4p, 9e, 9k, 31, and 32 are child pornography.

- Barry produced or conspired to produce Government Exhibits 4b, 4f, 4p, 9e, 9k, 31, and 32 with the intent to elicit a sexual response in the viewer.

- Barry participated in producing the photographs of O.B. and R.B with the specific intent of creating visual depictions of sexually explicit conduct.

- The cameras used to take the photographs depicting child pornography were produced overseas and shipped and transported through foreign and interstate commerce.  Barry's Kodak camera and Noonan's Casio camera were both manufactured in China.  The computers on which the photographs were stored were shipped and transported through interstate commerce.  Barry's Dell laptop hard drive was manufactured in China.  Noonan's laptop was manufactured in Malaysia and the hard drive to his desktop computer was manufactured in Thailand.  The child pornography images were produced using materials that were transported in foreign or interstate commerce.

## III.   Conclusions of Law

The court enters the following conclusions of law:

- R.B. and O.B. were under 18 when the photographs were taken.

- Barry was the legal guardian of O.B. and R.B. when the photographs were produced.

- Government Exhibits 4d, 4f, 4g, 4n, 4s, 31 and 32 do not depict simulated sexual intercourse.

- Government Exhibits 4b, 4f, 4p, 9e, 9k, 31, and 32 do depict sexually explicit conduct in that they are visual depictions of lascivious exhibition of the genitals.

- Barry produced Government Exhibits 4b, 4f, 4p, 9e, 9k, 31, and 32 with the intent to elicit a sexual response in the viewer.

- Government Exhibits 4b, 4f, 4p, 9e, 9k, 31, and 32 are child pornography.

- Barry participated in producing the photographs of O.B. and R.B with the specific intent of creating visual depictions of sexually explicit conduct.

- The depictions of child pornography were produced using materials that were shipped or transported in foreign or interstate commerce.

The court finds and concludes that Barry is guilty of conspiracy to commit sexual exploitation of a minor, specifically, to produce child pornography, in violation of 18 U.S.C. §§ 2251(a) and (e), as charged in Counts 1 and 2 of the superseding indictment, and guilty of conspiracy to commit sexual exploitation of a minor, specifically, production of child pornography by a parent or guardian, in violation of 18 U.S.C. §§ 2251(b) and (e), as charged in Counts 6 and 7 of the superseding indictment.

SIGNED on June 11, 2014, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

44