IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| § | |
| VS. § | CRIMINAL NO. H-12-691 |
| § | |
| § | |
| DAVID MORSE BARRY § | |

**MEMORANDUM AND OPINION DENYING MOTION TO ACQUIT**

David Morse Barry was convicted of conspiracy to produce child pornography and production of child pornography by a parent or guardian, in violation of 18 U.S.C. § 2251(b) and 2251(e). He moved for a judgment of acquittal, (Docket Entry No. 98), and the government responded, (Docket Entry No. 103). Based on careful consideration of the record, including the testimony and exhibits, the motion and response, and the relevant law, the court denies the motion. The reasons are explained below.

**I.    Background**

Barry was indicted on two counts of conspiracy to produce child pornography and two counts of production of child pornography by a parent or guardian. He waived his right to a jury trial under Federal Rule of Criminal Procedure 23(a), with the government's consent and, after a hearing, the court's approval. The court held a five-day bench trial beginning on April 21, 2014.

On June 11, 2014, based on the trial exhibits and testimony, this court found and concluded that Barry was guilty of conspiracy to commit sexual exploitation of a minor, specifically, to produce child pornography, in violation of 18 U.S.C. §§ 2251(a) and (e), as charged in Counts 1 and 2 of the superseding indictment, and guilty of conspiracy to commit sexual exploitation of a minor,

specifically, production of child pornography by a parent or guardian, in violation of 18 U.S.C. §§ 2251(b) and (e), as charged in Counts 6 and 7 of the superseding indictment. (Docket Entry No. 91). Barry timely filed this Rule 29 motion on July 16, 2014. (Docket Entry Nos. 95 (granting extension of time); 98).

## II.     The Legal Standard for a Motion for Acquittal

A Rule 29 motion for judgment of acquittal "challenges the sufficiency of the evidence to convict." *United States v. Medina*, 161 F.3d 867, 872 (5th Cir. 1998). The issue is "whether, viewing the evidence in the light most favorable to the verdict, a rational [finder of fact] could have found the essential elements of the offense charged beyond a reasonable doubt." *United States v. Boyd*, — F.3d —, 2014 WL 6914800, at *5 (5th Cir. Dec. 9, 2014) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Miller*, 588 F.3d 897, 907 (5th Cir. 2009)). "The standard does not require that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *United States v. Loe*, 262 F.3d 427, 432 (5th Cir. 2001). The factfinder is "free to choose among reasonable constructions of the evidence," and "it retains the sole authority to weigh any conflicting evidence and to evaluate the credibility of the witnesses." *Id.* (quotations and citations omitted).

## III.    Analysis

Barry argues that the court erred in: (A) finding certain background facts; (B) finding that Barry knew of, condoned, and participated in producing the images with the purpose of creating child pornography; (C) finding and concluding that the images constituted child pornography; and (D) admitting certain evidence. Each argument is analyzed below.

2

A. **There is No Error in the Court's Statement of the Background Facts Justifying a Judgment of Acquittal**

Barry argues that "some background facts" in the court's Findings of Fact and Conclusions of Law dated June 11, 2014 "are incorrect or incomplete." (Docket Entry No. 98, at 12). Barry argues, contrary to the court's explicit or implicit findings and conclusions, that: (1) he reported to the nudist website moderator anybody who asked him "creepy" questions about him and his children; (2) he did not "chat" online with Timothy Whittington; (3) a single line about shaking an adult penis out of the thousands of chats between Barry and Noonan did not support the court's findings and conclusions; and (4) the court improperly concluded that Barry sent certain photos via MSN messenger when the government's agent, Jeffrey Chappell, testified at the bench trial that he was not sure whether the image was sent or received, based on the information available in the MSN cache.

Contrary to these arguments, the record supports the court's court's credibility determinations and the court's background findings. Despite Barry's claims that he reported "creepy" questioners to the nudist website's moderator, the court found that Barry's testimony on this score was not credible. The record evidence showed that on at least some occasions, Barry participated in and even welcomed such "creepy" advances. Barry said in an internet chat that it was "neat to see young boys with big meat." (Docket Entry No. 91, at 35). He agreed with the statement by a user he was chatting with that "all boys like to have their penis's [sic] played with." (*Id.* (citing Govt. Ex. 7L)). Barry transmitted naked photographs of his children to the user "nudemac," but later told "nudemac" that he would not send additional pictures because of the risk of law-enforcement attention. But Barry invited "nudemac" to instead spend time with him and his children in person so that "nudemac" could see the boys. (*Id.* (citing Govt. Ex. 7e ("[Y]ou can see them live

when you come to visit.")))). The court's descriptions of Barry's participation in the nudist website and the chats have ample record support.

The court's characterization of the chats between Barry and Noonan also has support in the record. The court acknowledged that Barry "testified that he and Noonan . . . communicated about such 'everyday' topics as music, food, and child-rearing." Barry testified that his chats with Noonan "consisted only of 'everyday' talk about shared interests in nudism and child rearing." (*Id.*, at 3). The court found Barry's testimony not credible. The record showed that the "chats covered sexual topics and included sexually explicit references about children." (*Id.*).[1]

Barry contends that his chats with Noonan did not mention or describe "any type of agreement between" them "to take any pictures of the boys." The court never found or concluded otherwise. Instead, the court found that other evidence in the record, including the images themselves, demonstrated beyond a reasonable doubt that Barry and Noonan agreed to take photographs of the naked Barry children, in poses that the court found made the photographs pornographic.

The record similarly supports the court's factual finding that Barry sent (rather than received) the images found in his MSN messenger cache to other users. The images are of Barry's own naked children. There is no basis to find that "nudemac" or any other user would have sent Barry nude images of Barry's own children. Moreover, the images were created on Barry's hard drive in June 2010, well *before* they were created in the MSN Messenger cache in September 2010. (*Id.*, at 19). And the content of Barry's chats with "nudemac" support the court's finding that Barry sent a naked

---

[1] The court agrees with Barry that its observation that Barry "chatted" with Tim Whittington should be clarified. Barry did not chat regularly with Whittington, but instead "met [Whittington] one night at the request of Noonan." (Docket Entry No. 98, at 12). This clarification does not affect the analysis or result.

4

picture of his boys to "nudemac." When chatting with "nudemac," Barry said, "I will get a pic for you," and then said "see my boys?" (*Id.* at 20). A few seconds later, "nudemac" responded, "how cute," before warning Barry to be careful about "sending naked pics of kids" because it was illegal. (*Id.*). The chats include "nudemac" telling Barry that he "guess[es] the older one will have to be the foreskin bearer for the family," corresponding to the fact that one of Barry's boys was circumcised while the other was not. (*Id.*).

In short, there is no basis to find the errors Barry asserts in the background facts section of this court's findings and conclusions.

**B.     There is No Basis for Acquitting Based on the Court's Findings and Conclusions about Barry's Role and Purpose in Producing the Photographs**

**1.     Barry's Knowledge and Role in Producing the Photographs**

The court found that "[t]he credible evidence proves beyond a reasonable doubt that Barry took the photographs or approved of them being taken and that Barry knew of the images found in the Messenger cache and the images on his laptop's hard drive, in particular the images saved in the 'Craig Houston,' 'David & the Boys,' and 'my pics' folders." (Docket Entry No. 91, at 20). Barry argues that this finding is based on "guess," "speculation," and "assumption." (Docket Entry No. 98, at 10-11). He disputes the court's observations, based on the images and testimony, that Noonan had a small house and when the pictures were taken, the doors were open, adding to the basis that Barry knew that the pictures were being taken. Barry also argues that the court should not have inferred, based on the images on his laptop taken during his first trip to Houston with his children to visit Noonan, that he was "present when other pictures were taken later or the pictures were taken with [his] knowledge or permission." (*Id.* at 11). Finally, Barry argues that the court should not

5

have rejected as "highly unlikely" his hypothesis that the photos with the children and Noonan could have been taken by placing the camera on a shelf or using a tripod and the timer function.  (*Id.*).

Barry's argument fails to account for the record, including his own testimony. Barry testified that he watched the boys "closely" when they all stayed with Noonan. In the first visit, he was with Noonan and the boys throughout, except for a 45- to 60-minute absence to attend a job fair. Barry's argument also fails to acknowledge that the nude photographs of the children in Noonan's home were found on Barry's laptop in the user-created folder labeled "my pics." (Docket Entry No. 91, at 18). This adds to the basis for finding that Barry knew that Noonan was taking the pictures.

The evidence supported the court's finding that Barry's denial that he knew of, or had a role in, taking the photographs was simply not credible.  That evidence included the photographs showing a small house with open doors and the absence of any effort to hide or conceal the activity of taking the photographs.  Evidence showed that the photographs of Noonan and the children together in the bathtub were taken by another individual, who was Barry, and not by using a tripod or timer, as Barry hypothesized. The court found that FBI Special Agent Chappell credibly testified about numerous facts, including the location of the images on Barry's laptop hard drive and MSN Messenger cache.  The chat logs supported the court's findings and conclusion that Barry knew of, condoned, and participated in producing the images.

After considering all of the evidence presented during the bench trial, the court made credibility determinations and reached its findings of fact and conclusions of law, including that the "government presented ample evidence that Barry was the most likely person to have taken some of the photographs showing Noonan and one or more of the boys naked.  The persons in the photographs were in positions and places that were not only sexually suggestive but that also made

6

it highly unlikely that those individuals took the photographs or used the camera's timer to do so. The government also presented evidence that contradicted Barry's testimony that he had never seen the photographs and did not know that they existed. Many of the photographs were found on Barry's own laptop computer, and Barry sent some of these photographs to other people using his personal MSN Messenger account." (Docket Entry No. 91, at 6). Barry presents no basis to reject these findings and instead enter a judgment of acquittal.

### 2. The Record Shows Barry's Specific Intent to Create Child Pornography

Barry argues that "[t]he government [] failed to prove that Barry acted or conspired with Noonan for the purpose of producing a visual image of [the children] engaging in sexually explicit conduct." (Docket Entry No. 98, at 2). The record supports the court's finding that "Barry himself took at least two pictures—the pictures of Noonan and the Barry children in the bathtub—that are child pornography," which "is sufficient to meet the statute's intent requirement." (Docket Entry No. 91, at 41). As to other photographs, the record supports the court's finding that Barry "actively participated in their creation" and "was aware of and knew of the character and content of the photographs." (*Id.*). Based on the record, the court found that "Barry brought the children to Houston to stay with Noonan at Noonan's home; Barry was in Noonan's home when the pictures were taken; the pictures were located on Barry's laptop hard drive; Barry sent some of the photographs through MSN Messenger; and Barry continued to bring the children to Houston and allow them to be photographed despite knowing about the pictures taken during the prior Houston trips." (*Id.*).

Barry's argument that he was simply following a nudist lifestyle lacks record support, and the court rejected it as not credible. His testimony to that effect was "contradicted by the lack of

other evidence supporting a nudist lifestyle apart from time spent with Noonan; by other photographs showing the unidentified naked boy found on Barry's laptop; by the sexual references to children in internet chats Barry engaged in with others; by the circumstances in which the photographs at issue were taken; and by a video tape recording in which one of his children told CPS that Barry touched him inappropriately." (*Id.* at 21). Barry's motion for acquittal provides no basis to reject these factual findings.

Barry contends that the court should not have relied on the photographs of the unidentified naked boy in reaching the conclusion "that Barry had [the] intent to create child pornography" because "these 'unknown boy' pictures are not contained in the four corners of the charged pictures and therefore are not relevant to the issue of intent." (Docket Entry No. 98, at 14). This argument conflates the inquiry into (1) whether Barry had the intent to create child pornography—which may be shown by evidence apart from the images themselves—and (2) whether the images constitute child pornography—which requires consideration of six factors, including whether the visual depiction is intended or designed to elicit a sexual response in the viewer. The court properly considered the photographs of the unidentified naked boy in determining Barry's intent with respect to the pictures at issue. *See United States v. Vanderwal*, 533 F. App'x 498, 502 (6th Cir. 2013) ("That other child pornography possessed by the defendant is not relevant to determining the lasciviousness of an image created by a defendant, does not mean it is not relevant to his intent in creating that image." (citing *United States v. Sims*, 708 F.3d 832, 836 (6th Cir. 2013)).[2]

---

[2] Barry also asserts that the photographs of the unknown boy "are nothing more than naked pictures which are constitutionally protected" and the "male in the picture does not have an erect penis," (Docket Entry No. 98, at 14 (citing *Osborne v. Ohio*, 495 U.S. 103, 114 (1990) ("[D]epictions of nudity, without more, constitute protected expression."))). Not so. The photograph of the young unknown boy in the bathtub (Government Exhibit 4aa), for example, undisputedly shows an erect penis.

8

**C.     The Record Shows that the Images Constituted Child Pornography**

Barry argues that the court erred in finding seven images to be child pornography under the statute, which requires "sexually explicit conduct."  18 U.S.C. § 2251(a).  *See* Government Exhibits 4b, 4f, 4p, 9e, 9k, 31, and 32.  Section 2266(2)(A) defines "[s]exually explicit conduct" as either: (1) "actual or simulated . . . sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal"; or (2) "lascivious exhibition of the genitals or pubic area."  18 U.S.C. § 2256(2)(A).  The first prong did not apply because "none of the exhibits the government submitted depict simulated sexual intercourse."  (Docket Entry No. 91, at 27).  The issue was whether the images depicted lascivious exhibition of the Barry children's genitalia.

The court found that the seven images satisfied the criteria for lascivious exhibition under the factors set out in *United States v. Dost*, 636 F.Supp. 828 (S.D. Cal. 1986), *aff'd*, 813 F.2d 1231 (9th Cir.1987).  (*Id.* at 33).  The factors are:

1)   whether the focal point of the visual depiction is on the child's genitalia or pubic area;

2)   whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;

3)   whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;

4)   whether the child is fully or partially clothed, or nude;

5)   whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; [and]

6)   whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

*Dost*, 636 F. Supp. at 832.  These factors are "not exhaustive, and no single factor is dispositive."

*United States v. Steen*, 634 F.3d 822, 827 (5th Cir. 2011) (quotation omitted).

Applying these factors to the seven images at issue, the court found and concluded that the first factor supported finding images focused on the boys' genitals lascivious; the second factor supported finding images taken in Noonan's bedroom lascivious; part of the third factor supported finding lasciviousness in images showing the children in unnatural poses; the fourth factor—nudity—supported finding all seven images lascivious; the fifth factor did not apply because the Barry children were so young; and the sixth factor supported finding all seven images lascivious.

The sixth *Dost* factor, which asks "whether the visual depiction is intended or designed to elicit a sexual response in the viewer," is central to Barry's motion for judgment of acquittal. *Dost*, 636 F. Supp. at 832. Barry argues that: (1) the court used the wrong test in applying this sixth factor and finding that the pictures were lascivious, (Docket Entry No. 98, at 2-5); (2) the court misapplied the limited-context test by relying on certain impermissible factors, (*id.* at 5-7); and (3) the remaining *Dost* factors do not support the court's findings, conclusions, and guilty verdict, (*id.* at 8-10).

### 1. The Argument that the Court Cannot Consider Context in Applying *Dost*

As noted in the court's findings and conclusions, the "circuits are split on whether a court should limit its review to the image itself, the 'four-corners test,' or whether the court should consider the context in which the image or related images were produced." (Docket Entry No. 91, at 30 (citing cases)). While the Fifth Circuit has not clearly stated which test it follows, in *United States v. Steen*, 634 F.3d 822, 828 (5th Cir. 2011), the panel majority cited *United States v. Johnson*, 719 F. Supp. 2d 1059, 106 (W.D. Mo. 2010), which expressly looked to the context in which a video was produced in concluding that it was not lascivious.

10

Barry contends that "*Steen* clearly uses the *Dost* factors and nothing else to make its decision." (Docket Entry No. 98, at 4). But the *Steen* panel did consider context. The panel opinion reversed the district court's judgment that the defendant, a voyeur, was guilty under the statute. The panel concluded that the evidence was insufficient to show that a fleeting image of a minor child's "*genitals* [in a tanning salon video] was designed to elicit a sexual response or whether, perhaps, merely being a voyeur excited Steen." *Steen*, 634 F.3d at 828 (emphasis original). The *Steen* panel reached this conclusion in part due to a government witness's testimony that "in addition to footage of K.S. and C.B., Steen's camera contained two other short films from the tanning salon, neither of which contained nudity." *Id.* n.28. The *Steen* panel also observed that "[w]hen a photographer selects and positions his subjects, it is quite a different matter from the peeking of a voyeur upon an unaware subject pursuing activities unrelated to sex." *Id.* at 828; *see also id.* at n.29 (distinguishing the voyeur example from a situation in which "the producer of the image arranged the minor and setting to fit his particular lust.") (citing *United States v. Overton*, 573 F.3d 679, 688-89 (9th Cir. 2009)).

Barry argues that his "attempt to capture nudity as opposed to taking pictures of the boys pursuing activities related to sex," (Docket Entry No. 98, at 9), is akin to the voyeur's acts in *Steen*. But this court found that Barry's testimony that he was simply following a nudist lifestyle with his children was not credible. Instead, the court found that Barry knew of, condoned, and participated in producing the images for purposes unrelated to a nudist lifestyle choice.

Barry also relies on the concurrence in *Steen*, which criticized the *Dost* factors and argued that the child pornography "statute does not suggest that the definition of pornography is contingent upon what arouses the defendant." 634 F.3d at 829. Whether that is the better argument is not the

11

point. The point is that the majority opinion considered the context in which the images were created and declined to adopt the concurrence's position. The Fifth Circuit appears to allow courts to consider context in evaluating the sixth *Dost* factor.[3] And much of the criticism directed toward considering context "is mitigated once one distinguishes between the production of child pornography " — at issue here — and mere "possession" of child pornography. *See United States v. Rivera*, 546 F.3d 245, 252 (2d Cir. 2008). The record and case law do not show that the court erred in considering the context in which the images were produced.

### 2. The Argument that the Court Applied a Limited-Context Test

Barry argues that even if "the limited context test is appropriate, this court misapplied it and ignored essential parts of the test. . . ." (Docket Entry No. 98, at 5). Barry's argument is based on the premise that this court adopted and applied the Sixth Circuit's "limited-context test" rather than the context test other circuits use.

In the findings and conclusions, the court surveyed circuit law and identified *United States v. Brown*, 579 F.3d 672 (6th Cir. 2009), as an example of a "narrower version of the 'context test' called the 'limited context test.'" (Docket Entry No. 91, at 32). Like other circuits that consider context, *Brown* allows courts to consider "(1) where, when, and under what circumstances the photographs were taken, (2) the presence of other images of the same victim(s) taken at or around the same time, and (3) any statements a defendant made about the images.'" 579 F.3d at 683-84. Unlike other circuits, however, *Brown* prohibits the "consideration of factors that do not relate directly to the taking of the images, such as past bad acts of the defendant, the defendant's

---

[3] Barry cites *United States v. Goodale*, 831 F. Supp. 2d 804, 812 (D. Vt. 2011), and argues that this opinion placed *Steen* on the "four-corners" side of the circuit split. But this opinion quoted Judge Higginbotham's concurrence as if it was the majority opinion; it was not.

possession of other pornography (pornography of another type or of other victims), and other generalized facts that would relate only to the general 'unseemliness' of the defendant." *Id.* at 684.

While the court's findings and conclusions noted *Brown*'s limited-context test in reviewing circuit law and quoted the opinion, this court did not apply that test. Instead, the court followed the context approach the other circuits use. The court noted that considering the context in which the images were produced is most consistent with Fifth Circuit authority,[4] is the more reliable way to determine lasciviousness, is consistent with what can be gleaned about congressional intent, and provides valuable information about the intent of the person who produced the image. (Docket Entry No. 91, at 32). This court cited *Brown* in explaining why considering context can be useful in close cases. (*See id.* at 32-33 ("As the Sixth Circuit noted, consideration of the context helps 'resolve close judgment calls about whether an image inadvertently focuses on a child's genitalia, or whether [the image] is intended to elicit a sexual response in the viewer.'" (quoting *Brown*, 579 F.3d at 684))).[5] But the court did not adopt or apply *Brown*'s limits on context while acknowledging the concern that "relying too heavily on context could lead to absurd results because '[a] pedophile may be aroused by photos of [fully-clothed] children at a bus stop wearing winter coats'" even

---

[4] Indeed, as discussed above, the *Steen* panel reversed the defendant's conviction in part because his two uncharged voyeuristic films of other victims, "neither of which contained nudity," suggested that "merely being a voyeur excited Steen" and there was insufficient evidence to conclude that the image of the minor's genitals "was designed to elicit a sexual response." *Steen*, 634 F.3d at 828 & n.28. Under the Sixth Circuit's test, such context could be forbidden because it related to "the general 'unseemliness' of the defendant." *Brown*, 579 F.3d at 684.

[5] Seizing on this language, Barry argues that if a judgment call is "close" then one cannot be guilty beyond a reasonable doubt. (Docket Entry No. 98, at 5). His argument confuses the government's evidentiary burden with determining, as a matter of law, whether a particular image is within the statute.

though such images would not be pornographic. (Docket Entry No. 91, at 33 (quoting *Steen*, 634 F.3d at 829 (Higginbotham, J., concurring))). But as this court noted, while the sixth *Dost* factor might weigh in favor of finding such a bus-stop photo lascivious if taken by a person with a sexual interest in children based on an intent to elicit a sexual response in the viewer, "the other five [*Dost*] factors clearly do not" support a finding of lasciviousness, "preventing the statute from sweeping too broadly." (Docket Entry No. 91, at 33). Contrary to Barry's argument, this court did not follow the *Brown* limited-context test.[6]

### 3. The Argument that this Court Misapplied the Limited-Context Test

Assuming, without deciding, that the limited-context test applies, as Barry argues, the seven images at issue are lascivious exhibitions and therefore child pornography. This argument provides no basis for a judgment of acquittal.

Government Exhibit 4b depicts one of the Barry children thrusting his nude pelvis out of the bathtub water and exposing his genitals in the center of the frame. Because the child is nude in this as well as the other six images, the court concluded that the "fourth *Dost* factor weighs in favor of finding lasciviousness." (Docket Entry No. 91, at 33-34). As for the other *Dost* factors, the court observed:

> Government Exhibit 4b shows one of the Barry children in the bathtub thrusting his pelvis out of the water with his legs spread. The boy's genitals are exposed and a focal point, if not the focal point, of the photograph. The first *Dost* factor weighs in favor of finding a lascivious exhibition of the child's genitals. The position of the boy with his hips thrusting out of the bathtub and exposing his genitals is exaggerated, intended to focus the viewer's attention on the genitals. As to the sixth *Dost* factor, the court concludes that the photograph was intended to elicit a sexual

---

[6] Barry contends that the facts are distinguishable from those in *Brown*, (Docket Entry No. 98, at 6-7), but, as noted above, this court cited *Brown* as one of many circuit cases considering the legal question of context and did not rely on *Brown*'s facts in applying the context test to the specific images at issue here.

14

> response in the viewer.  In addition to being found on Barry's laptop hard drive, the photograph was also found in the laptop's Messenger cache, meaning, as described above, that Barry sent this photograph to at least one other person through MSN Messenger.
>
> . . . .
>
> The fact that Barry . . . distributed the photograph of his child using [MSN Messenger] is one of the pieces of evidence leading this court to find and conclude that the photograph admitted as Government Exhibit 4b did not inadvertently focus on the Barry child's genitals and was instead produced with the intent to elicit a sexual response in the viewer.  This photograph shows a lascivious exhibition of the genitals and is child pornography within the meaning of 18 U.S.C. § 2251(a).

(Docket Entry No. 91, at 36-37).

Even limiting this analysis to the limited-context test under *Brown*, Barry's distribution of Government Exhibit 4b and the presence of other nude images of the Barry children, many of which "prominently displayed the subjects' genitals," (Docket Entry No. 91, at 36), support the court's conclusion that the images were intended or designed to elicit a sexual response in the viewer and were lascivious under the other *Dost* factors.

The same result applies to the other six images.  In the June 11, 2014 Memorandum and Opinion, this court found and concluded these images were child pornography because of the images themselves, the context in which they were created, and the remaining *Dost* factors.

> Government Exhibit 4f is a photograph showing Noonan standing behind one of the Barry children.  Noonan's arms are wrapped around the boy.  The boy's genitals are exposed, but the primary focus is Noonan's face and the boy's face.  The first factor weighs against a finding of lasciviousness.  The other factors, however, weigh strongly in favor of finding lasciviousness.  Noonan's position right behind the child, with the boy's buttocks pressed against Noonan's groin, is sexual.  While the photograph is not enough to simulate sexual intercourse, it is nonetheless highly suggestive of sexually intercourse.  Noonan's arms are wrapped around the boy and his hands are over the boy's hands.  This photograph, like Government Exhibit 4b, was found in Barry's laptop Messenger cache, meaning that Barry transmitted it to someone else.  The court finds and concludes that the photograph shows a lascivious exhibition of the genitals and is child pornography.

15

Government Exhibit 4p is a photograph showing the two Barry children sleeping on a makeshift bed on the floor. One of the boys is nude, lying on his back with his right leg spread, exposing his genitals. The boy is positioned to make his genitals the focal point of the photograph. The second *Dost* factor weighs in favor of a finding of lasciviousness. Though the first two *Dost* factors weigh in favor of a finding of lasciviousness, they alone are not sufficient for the court to find a lascivious exhibition of the genitals. If the context was a parent photographing his sleeping child, that context would weigh in favor of finding an "innocent family photograph[]." *See Brown*, 579 F.3d at 684. The context here is different. The context in which the photograph was taken shows that the photograph was not an innocent family picture or a picture that inadvertently focused on the child's genitals. The court finds and concludes that this photograph shows a lascivious exhibition of the genitals and is child pornography.

Government Exhibit 9e is a photograph substantially similar to Exhibit 4p. The court's analysis is similar as well. The court finds and concludes that this photograph shows a lasciviousness exhibition of the genitals. Similar to Exhibit 4p, in Exhibit 9e, the Barry child is photographed nude on a couch or chair. The boy's legs are spread, fully exposing his genitals. The photograph does not focus exclusively on the boy's genitals, but his genitals at the center and are the focal point of the image. As with Exhibit 4p, the court finds and concludes that the photograph shows a lascivious exhibition of the genitals, and was taken with the intent to elicit a sexual response in the viewer. *See Rivera*, 546 F.3d at 252.

Government Exhibit 9k is a photograph of one of the Barry children on the same bed or couch that is pictured in Exhibit 9e. The photograph shows the boy, who is nude, from the lower thighs up. His legs are spread, making his exposed genitals a focal point. The court finds and concludes that the photograph shows a lascivious exhibition of the boy's genitals, was taken with the intent to elicit a sexual response in the viewer, and is child pornography.

Government Exhibits 31 and 32 are similar photographs showing Noonan and the two Barry children in Noonan's bathtub. The photographs were taken in December 2010 during Barry and his children's third trip to Houston. The children's genitals are not exposed, so the first *Dost* factor weighs against finding lasciviousness. The second factor, however, weighs heavily in favor of a finding of lasciviousness. The setting and the positions of Noonan and the Barry child closest to Noonan are sexually suggestive. The boy's buttocks are shown as pressed against Noonan's genitals. In Exhibit 31, Noonan's hands are touching or nearly touching the boy's genitals. As to context, while it is not sexually suggestive for young boys in the same family to have a parent in the bathtub with them, that is not the context of these two photographs. Instead, the naked adult man in the photograph, Noonan, is not a family member. His history with the children was limited. He had seen the children only during their two prior trips to Houston, about five months earlier. . . . The

>photographs, and the context, lead the court to find and conclude that the images were taken with the intent to elicit a sexual response in the viewer. Both of these photographs are child pornography.

(Docket Entry No. 91, at 37-39).

The record amply supports these findings, whether the court considers the broader context of Barry's sexual interest in prepubescent boys or limits the focus to the limited context surrounding the images themselves.[7] Barry's argument that this court misapplied the limited-context test fails.

### D. The Arguments that the Court Erred in Evidentiary Rulings

#### 1. The Admission of Government Exhibits 31 and 32

Barry argues that two Government Exhibits—numbers 31 and 32—were admitted over his objection and to his surprise, in violation of the Due Process Clause. Barry argues that these images were "not designated child pornography by the Government at any of the pretrial meetings or on the original or amended exhibit list." (Docket Entry No. 98, at 12). The Government responded, and the court agreed, that the images and their admission did not surprise or unfairly prejudice Barry because he and his defense attorney were both fully aware of the images and their nature. Barry's defense counsel at trial had represented Barry in his earlier Child-Protective Services trial. The pictures were produced and admitted in that proceeding. Additionally, this court gave Barry and his counsel ample opportunity—"several days," (*id.*)—to review the pictures after learning of the

---

[7] Finally, even under the more restrictive four-corners test for assessing the sixth *Dost* factor, at least one image—Government Exhibit 4b—shows a lascivious exhibition of the genitals. As discussed above, that image depicts one of the Barry children thrusting his naked pelvis out of the bathtub water with his legs spread and his genitalia exposed as the image's focal point. *See United States v. Knox*, 32 F.3d 733, 746 (3d Cir. 1994) ("[T]he ordinary meaning of the phrase 'lascivious exhibition' means a depiction which displays or brings forth to view in order to attract notice to the genitals or pubic area of children, in order to excite lustfulness or sexual stimulation in the viewer."); *see also* (Docket Entry No. 91, at 34 (observing that Barry's "intent is also demonstrated by the photographs themselves")).

17

Government's desire to introduce them in this bench trial. The court asked Barry and his counsel multiple times if they wished to proceed after the government sought to introduce these exhibits, and they said yes. Neither Barry nor his counsel asked for more time or informed the court that "Barry's expert was in another state and arrangements could not be made for Barry's attorneys to be physically present with the expert to discuss strategy" over these images. (*Id.*). Given the notice to Barry and his counsel that the Government would introduce the exhibits, and the absence of any request, in response to the court's question, for a delay, the admission of these exhibits did not offend Barry's due process rights.[8] *See Blackmon v. Johnson*, 145 F.3d 205, 209-10 (5th Cir. 1998) (rejecting appellant's due-process challenge "based on unfair surprise by the use of extraneous offense evidence" when the defendant failed to show prejudice).

### 2. The Admission of the Forensic Interview with R.B.

Barry contends that the court mistakenly stated in its June 11, 2014 findings and conclusions that Barry and counsel did not object to admitting the video recording of the forensic interview with R.B. in which he stated that Barry touched his penis. (Docket Entry No. 98, at 15). Barry argues that he objected to "any mention of the outcry or to R.B. testifying about it" at "the pretrial" and the court "overruled the objection." (*Id.*). Just five days before trial, however, Barry "acknowledge[d] and waive[d] any objection he may have [had], including but not limited to hearsay or violations of the confrontation clause" to admitting "[t]he forensic interviews of R.B. from 6/7/2013 and 6/14/2013 . . . in lieu of calling the minor to testify pursuant to Federal Rule of Evidence 414."

---

[8] Moreover, as discussed above, because the court concluded that five other images constituted child pornography, any error in admitting Exhibits 31 and 32 would be harmless.

(Second Trial Stipulation, Docket Entry No. 82-2).[9]

### E. Barry's Arguments Fail to Show a Basis for a Judgment of Acquittal

Viewing the evidence in the light most favorable to the verdict, the Government proved beyond a reasonable doubt that: Barry conspired with Noonan to produce, and did produce, the images at issue with the specific intent to create child pornography; the seven images were sexually explicit under the federal child pornography statute, particularly when placed in context; and some (if not all) of these images would qualify as pornography even under the limited-context or four-corners tests for assessing the sixth *Dost* factor.

## IV. Conclusion

Barry's motion for acquittal, (Docket Entry No. 98), is denied. The Sentencing Hearing is set for 9:30 a.m. on January 22, 2015, at 515 Rusk Street, Houston, Texas, 77002, Courtroom 11-B.

SIGNED on January 16, 2015, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge

---

[9] In any event, as discussed above, because the images qualify as child pornography in the absence of R.B.'s allegations, even if there was an objection, any error in admitting R.B.'s forensic interview was harmless.