1                UNITED STATES DISTRICT COURT

2                  SOUTHERN DISTRICT OF TEXAS

3                    HOUSTON DIVISION

4  UNITED STATES OF AMERICA       .
                        .  Criminal Action

5  VERSUS                  .  No. H-12-CR-691
                        .

6  DAVID MORSE BARRY,         .  Houston, Texas
                        .  January 22, 2015

7                        .  10:36 a.m.
               Defendant.   .

8  . . . . . . . . . . . . . . . . . . .

9

10               TRANSCRIPT OF PROCEEDINGS

11        BEFORE THE HONORABLE LEE H. ROSENTHAL

12                    SENTENCING

13  APPEARANCES:

14  FOR THE UNITED STATES OF AMERICA:

15        Ms. Sherri Zack
         Mr. Bob Stabe

16        Assistant United States Attorneys
         UNITED STATES ATTORNEY'S OFFICE

17        1000 Louisiana
         Suite 2300

18        Houston, Texas  77002
         713.567.9300

19  FOR THE DEFENDANT:

20        Mr. Robert T. Jarvis
         ROBERT T. JARVIS LAW FIRM, PC

21        123 West Houston
         Sherman, Texas 75090

22        903.892.8500
         bobjarvislawfirm@aol.com

23

24

25        PROCEEDINGS RECORDED BY STENOGRAPHIC MEANS,
     TRANSCRIPT PRODUCED FROM COMPUTER-AIDED TRANSCRIPTION

Gayle Dye, CSR, RDR, CRR - 713.250.5582

1   **THIS TRANSCRIPT HAS BEEN FURNISHED AT PUBLIC EXPENSE UNDER THE**
     **CRIMINAL JUSTICE ACT AND MAY BE USED ONLY AS AUTHORIZED BY COURT**
2   **ORDER.   UNAUTHORIZED REPRODUCTION WILL RESULT IN AN ASSESSMENT**
     **AGAINST COUNSEL FOR THE COST OF AN ORIGINAL AND ONE COPY AT THE**
3   **OFFICIAL RATE.**

4   **GENERAL ORDER 94-15, UNITED STATES DISTRICT COURT, SOUTHERN**
     **DISTRICT OF TEXAS.**

5

6

7   PROBATION OFFICER:

8           Ms. Linda Wright-Bailey

9

10

11  COURT REPORTER:

12          GAYLE L. DYE, CSR, RDR, CRR
            515 Rusk, Room 8007A
13          Houston, Texas  77002
            713.250.5582
14

15

16

17

18

19

20

21

22

23

24

25

1                    PROCEEDINGS

2                  January 22, 2015

3              THE COURT:  State your appearances and be seated,

4    please.

10:36:17    5              MS. ZACK:  Sherri Zack and Bob Stabe on behalf of the

6    United States, your Honor.

7              MR. JARVIS:  Good morning, Judge.  Bob Jarvis for the

8    Defendant.

9              THE COURT:  All right.  The Court notes the presence

10:36:31   10   of Agent Chappell, as well.  He was previously sworn previously

11   in the hearing that immediately preceded this on the

12   co-Defendant in the case.  And he remains under oath if his

13   testimony is required.

14                    You may be seated, sir.

10:36:38   15                    All right.  Mr. Jarvis, have you and Mr. Barry

16   together carefully reviewed the presentence report, the

17   objections, and the addendum?

18              MR. JARVIS:  Yes, ma'am.

19              THE COURT:  Do you have any objections beyond the ones

10:36:54   20   you stated in writing?

21              MR. JARVIS:  No, ma'am.

22              THE COURT:  All right.  Let's take up those

23   objections.  And I want to do one first because I think it's a

24   really important one, that is, in terms of its guideline impact.

10:37:12   25                    You've objected to the -- to paragraphs 32, 47,

1  and 56 on obstruction which were imposed on the ground that you

2  committed perjury in testifying as to certain matters that I

3  found in my findings and conclusions were contradicted by the

4  evidence, in particular, the evidence of the content of the

10:38:08  5  electronic chats different from what Mr. Barry described;

6  Mr. Barry's denial of existence of any of the photographs other

7  than the ones that included him; and that his denial that he

8  knew of any of the photographs that showed Noonan with the

9  children or that showed the children taken at Noonan's house;

10:38:36  10  and the denial of their presence on his own computer which was

11  contradicted by evidence as to the circumstances and electronic

12  indicia surrounding the presence of the photographs on

13  Mr. Barry's laptop, including electronic evidence relating to

14  their receipt, their access to them, accessing them, and sending

10:39:11  15  them on to others.

16           Here's my point on those objections -- and

17  probation will correct me if I'm wrong on this as a matter of

18  guideline calculation -- you have argued in your objections that

19  if I granted this, the guideline -- that if I sustained your

10:39:41  20  objection --

21           MR. JARVIS:  Yes, ma'am.

22           THE COURT:  -- then the guideline -- the offense level

23  -- the guideline calculation would be affected because the

24  offense level would be a 42 instead of a 44 which would result

10:39:58  25  in a range of 324 to 405 months as opposed to 360 to life,

1   correct?

2           MR. JARVIS:  No, ma'am.  I think -- well, according to

3   my sentencing table, that would -- that would be a 41.

4           THE COURT:  Oh, yeah.  No.  I'm looking at the wrong

10:40:34   5   column, sorry.

6           MR. JARVIS:  So, it would be dropping it down to a 42.

7   But I think the Court, in order to get me to a 42 level --

8           THE COURT:  No.

9           MR. JARVIS:  -- you'd have to grant both of my

10:40:44   10   objections because that would be a total of four --

11           THE COURT:  Right.

12           MR. JARVIS:  -- from where it is now.

13           THE COURT:  Okay.

14           MR. JARVIS:  So, if you just grant one, it doesn't do

10:40:54   15   me any good.

16           THE COURT:  It's a 43 now.  It's life right now.

17           MR. JARVIS:  Yes, ma'am.  So, in order to get it down,

18   you need to grant both of my objections the way I calculate it.

19           THE COURT:  I think that's correct.  I think that's

10:41:05   20   correct.

21               May I see probation for a moment.

22       (Side-bar discussion off the record between the Court and

23   the probation officers.)

24           THE COURT:  Probation confirmed what I was saying

10:42:53   25   incorrectly but the result is the same.  Under the guideline

1  grouping rules, even if I were to grant your objection, the

2  guideline calculation would be unaffected because it would --

3  and I'm not going to explain the technical reasons well, but the

4  grouping rules would result in the -- and I'm going to ask

10:43:20  5  probation to explain how they got there so that our record is

6  clear -- the grouping -- because this is, in fact, a 44 that is

7  treated for guideline purposes the same as a 43 in terms of the

8  consequence, it does -- it doesn't take it down to a 42 which

9  would be 360 to life because, even though you would think that,

10:43:47  10  the additional point given for the grouping that includes Counts

11  3S and 5S --

12              It's 5, right?

13              THE PROBATION OFFICER:  That's correct, your Honor.

14              THE COURT:  -- would add another point back in.  So,

10:44:07  15  that would take us back down to life.  That's the reason.

16              MR. JARVIS:  Okay.

17              THE COURT:  It takes us back down to a 43 or 44, so it

18  doesn't change the guideline calculation even if you're right.

19              Did I state it sufficiently to make our record

10:44:24  20  clear for a reviewing Court?

21              THE PROBATION OFFICER:  That's correct, your Honor.

22              THE COURT:  All right, good.  It's moot.

23              MR. JARVIS:  I understand with that explanation,

24  Judge.

10:44:33  25              THE COURT:  All right.  Having said that, it is moot

1  for guideline calculations.  To the extent you want to argue the

2  same kinds of points that bear on the 3553(a) analysis, I'm not,

3  of course, in any way precluding you from doing that.

4          And I want to thank probation for walking me

10:45:02  5  through what I find to be the most opaque part of the guideline

6  calculation and counsel, obviously, agrees with me that it is

7  opaque.

8          MR. JARVIS:  Yes, ma'am.  A nice way to put that.

9          THE COURT:  Yes, thank you.

10:45:17  10          All right.  Let's go back to the beginning of the

11  other objections.  You've made a host of objections to factual

12  errors and omissions that -- all of which are addressed in the

13  findings, in the conclusions, and in the motion for

14  reconsideration or motion for judgment of acquittal and the

10:45:40  15  ruling that followed the motion for judgment of acquittal and

16  denied it.

17          MR. JARVIS:  May I?

18          THE COURT:  Go ahead.

19          MR. JARVIS:  I had to write these objections and turn

10:45:51  20  them in before.

21          THE COURT:  I understand.

22          MR. JARVIS:  And so, with that, I understand how the

23  Court has ruled.  We just wanted to put those on the record.

24          THE COURT:  And that's fine.  And for the record, I

10:46:01  25  will state that I have carefully considered them.  I've

Gayle Dye, CSR, RDR, CRR - 713.250.5582

 1  considered the response from the probation officer that the

 2  information is sufficiently reliable, that it was supported by

 3  the Government's investigative material; and I don't have to

 4  limit myself to that information in any event, that is, the

 5  information the Government had available at the time the

 6  investigation occurred.

 7           But primarily for the reasons stated in my

 8  findings and conclusions and order denying the judgment of

 9  acquittal, the opinion on that, I do not find the arguments

10  relating to the factual information disclosed in the trial

11  record, in the PSR to be erroneous, particularly, not in a way

12  that affects guideline calculation.  It doesn't, number one.

13           Number two, there is also a -- to the extent the

14  arguments -- without diminishing anything I just said with

15  respect to my own findings and conclusions and denial of

16  reconsideration in the form of a judgment of acquittal motion,

17  the Court denies -- the Court is not precluding Mr. Barry from

18  arguing these points under 3553(a).

19           I think exactly the same thing applies to your

20  objections under paragraphs 27, 42, and 51; and I think that

21  addresses all of your objections.

22           MR. JARVIS:  Yes, ma'am.

23           THE COURT:  The Court adopts the PSR, directs it be

24  made part of this record.  Under the PSR, the total offense

25  level is 43 and the criminal history category is I, which is a

10:46:20
10:46:39
10:47:15
10:47:40
10:48:07

Gayle Dye, CSR, RDR, CRR - 713.250.5582

1   life sentence.  There is a fine range but no ability to pay.

2   I'm not going to impose a fine.  I will, obviously, impose the

3   $400 mandatory assessment.

4            At this time, I'd like to hear from Mr. Barry and

10:48:28   5   from counsel; and then, I'll hear from the Government.  I don't

6   care which of you goes first, Mr. Jarvis, Mr. Barry.

7            MR. JARVIS:  Thank you.

8            THE DEFENDANT:  Thank you, your Honor.  While I've sat

9   and listened to all this and read all the reports, your Honor, I

10:48:48  10   duly respect the Court's decision in the matter of this case;

11   but I still maintain my innocence; and I also am requesting with

12   your Honor that, when you look at the sentencing guideline, that

13   you take into consideration my age; and hopefully, you'll come

14   up with a sentence where I won't have a chance not to get out

10:49:19  15   and, at least, see some of my family again and that you won't

16   let me stay in there and end up dying in prison.

17            Thank you.

18            THE COURT:  Thank you, sir.

19            MR. JARVIS:  Judge, you've heard all the evidence and

10:49:44  20   the PSR, and I just want to highlight just a few things about

21   Mr. Barry.  You know, as a former prosecutor, I understand these

22   are probably the worst cases, period, end of statement, worse

23   than a murder case.

24            So, I understand what you said earlier in

10:50:00  25   Mr. Noonan's sentencing about harsh sentences, and they're

1  designed to be harsh.  And as a citizen of this country, I don't

2  have a big objection to that; but in this case I think we got a

3  few things that, hopefully, the Court will take into

4  consideration and give him certainly less than a life sentence.

10:50:17  5          Honorably discharged from the military.  He's

6  always worked or gone to school every day of his life.  He

7  wanted to foster kids and so they did that.  He ended up

8  adopting the boys.  They came to him developmentally delayed.

9  He learned sign language in order to help them to begin to

10:50:36  10  speak.  Had special teachers and educators come to help him get

11  the kids -- get the boys up to speed.  Well known at the school,

12  down there all the time.  PTA, teacher conferences.  Was very

13  active in the boys' lives.  Took them to church.  Baptized them.

14  Coached their soccer team.

10:50:56  15          So, it's not this evil person that if you just

16  look at the type of crime he's been convicted of there is

17  nothing redeeming but there is.  I've known David through this

18  whole process from the Wichita Falls case on, about over four

19  years.  I met him in his home.  I met his parents in their home.

10:51:18  20  They're good people.  He comes from good people.

21          He's lost everything, just simply everything.  He

22  just told me here a minute ago the termination of his parental

23  rights was held in October.  So, all of that is done.  He's lost

24  his long time partner.  He's lost his home.  He's lost any work

10:51:39  25  possibilities.  And he's lost the boys.  His mom has died during

1  all this.

2                You look at 3553(a); and while the guidelines say

3  it's an automatic life, the 3553(a) says you can take those into

4  consideration.  He's 56 years old.  He's had a thyroid problem

10:52:00  5  for several, if not many, years now.

6                What kind of sentence does he need and society

7  need in order to press upon him what he did was wrong?  I mean,

8  you said it yourself in Mr. Noonan's sentencing:  He was taken

9  advantage of by Mr. Noonan.  Now, doesn't mean he's not

10:52:16  10  responsible.  And I agree completely.  But he has no record,

11  never been arrested until he meets Craig Noonan and falls into

12  that vortex, which he should have known better and should have

13  protected his boys from.  I agree completely.

14                But a life sentence?  That's too much in this

10:52:38  15  case for this Defendant in my opinion.  If you give him a

16  20-year sentence, 240 months, he's going to be 70-something, if

17  he lives that long, before he's eligible to be released; and he

18  might have a year left at that point of his life.  I don't think

19  he's going to be a danger to society at that point.  He

10:52:59  20  certainly will have learned his lesson; and all of the

21  restrictions that you will put on him, of course, he will abide

22  by.

23                But a 30-year sentence guarantees him death.  He

24  won't live that long.  And at his age with his history and the

10:53:14  25  way this case took place, I think a 20-year sentence certainly

Gayle Dye, CSR, RDR, CRR - 713.250.5582

1    satisfies 3553(a); and that's what we'd ask the Court to do is

2    give him some hope that at some point in time he might be

3    released, if he lives that long.

4              THE COURT:  So, you want 240 months?

10:53:38    5              MR. JARVIS:  Yes, ma'am.

6              THE COURT:  You don't want even 360?

7              MR. JARVIS:  We would like 240.

8              THE COURT:  That's what you've argued for, right?

9              MR. JARVIS:  Yes, ma'am.  A 20-year sentence.  Thank

10:53:49   10    you, Judge.

11              THE COURT:  Thank you, sir.

12                   Ms. Zack.

13              MS. ZACK:  Your Honor, there is no question that

14    Mr. Barry's actions caused irreparable harm to these children,

10:54:03   15    and your Honor indicated that Mr. Noonan was certainly a driving

16    force in some of it.  But you also acknowledged that does not

17    negate Mr. Barry's culpability.

18              And I would point out that this Court heard from

19    Mr. Barry.  Mr. Barry is not a stupid man.  Mr. Barry is a

10:54:30   20    well-educated man who has at times found successful employment

21    and successful endeavors.  He was in a very long term, very

22    stable relationship.  He, if not physically, because we have no

23    proof, though, I would argue he did, emotionally cheated on his

24    partner.

10:54:52   25              The lengths he went to in order to accomplish

1    that, the surreptitiousness of it, the traveling to Houston, the

2    using the children I believe to meet whatever needs he and

3    Mr. Noonan had in this sexual depravity show an absolute lack of

4    respect not only for the children but for the laws of the United

5    States; and it also demonstrates his inability to acknowledge on

6    any level what was going on.

7              He sat before this Court and denied left and

8    right that he had any type of sexual interest in children.  He

9    didn't provide these children just because that's what

10   Mr. Noonan wanted.  Your Honor saw those chats.  That is not

11   somebody who doesn't have a sexual interest in children.  He

12   exposed them to somebody who is clearly a sexual predator.

13             I mean, there's no doubt about that, that

14   Mr. Noonan is a sexual predator; and he, too, became a sexual

15   predator when he turned those chats into something more and

16   allowed these children to be violated and photographed and

17   exposed to a lifestyle and a -- just activities that were

18   inconsistent with their proper development and with good

19   parenting and with sound judgment.

20             I think that a 240-month sentence is offensive to

21   what was done to them.  I think that he was more culpable than

22   Mr. Noonan in some ways because he was their parent and by

23   virtue of that should have protected them from anything and

24   everything.  And instead, he walked them into the mouth of the

25   dragon and stayed there with them and used them for his own

1   sexual gratification and to cement a relationship with someone

2   else who had similar deviant interests.

3   I believe that a 360-month sentence is more in

4   line with the activities and the culpability that Mr. Barry had;

10:57:37   5   and the fact that he may not survive that is of his own making,

6   not anything that this Court imposed.  Your Honor didn't get to

7   decide at what date and time he decided to leave what was

8   seemingly a very normal middle class, happy family existence and

9   go down that path.  But he made a series of bad decisions

10:58:05   10   followed by bad decision followed by bad decision.

11   At any time, he could have stopped; but, no, he

12   went to Houston.  He went to see Whittington.  He did all of

13   these things; and while none of the Whittington behavior

14   necessarily affects the guideline calculation, it demonstrates

10:58:27   15   that this was not a one time thing.  The chats demonstrate that

16   he was inviting other people over to partake of his children.

17   Whether that came to fruition or not, it

18   demonstrates that this is not -- he was not just a pawn.  Did

19   Mr. Noonan use him?  Absolutely.  But he was a willing

10:58:50   20   participant and he wanted to be used.  You saw the emotional

21   connection.  It was ferreted out at the trial.

22   He absolutely is unwilling to accept or

23   acknowledge what that relationship was, for whatever reason; but

24   his unwillingness to even accept any of that demonstrates why a

10:59:14   25   30-month (sic) sentence is appropriate to protect the public and

1   to protect other children because he clearly cannot control his

2   own behaviors and is, obviously, at the mercy of whatever it is

3   that allowed him to engage in a relationship with Mr. Noonan in

4   the first place and any of those other individuals online.

10:59:40   5             He took it to the next level.  And now, these

6   children have to pay for it.  They were at a good place.  Then,

7   they're removed from whatever they knew; and unfortunately, due

8   to the laws of the United States, his partner has absolutely no

9   claim on those children even though the partner had no

11:00:04   10   culpability and would have been a suitable caregiver; and it

11   would have maintained stability for those children.  But now,

12   they have none of that, and they have none of that because of

13   him.

14             Hopefully, they will land in a good place, be

11:00:21   15   adopted by a good family, and have a good life; but the damage

16   can't be undone.  And it's his fault, and he needs to take

17   responsibility for that.  And I don't believe there's any level

18   -- at any level does he think he did anything wrong to this day.

19   And I understand he has appellate rights and all that, but there

11:00:47   20   is absolutely -- and there has never been an acknowledgement

21   that he has a sexual interest in children and that what he did

22   harmed them in that way.

23             And we would ask that your Honor fashion an

24   appropriate sentence and attach a lifetime supervision to that

11:01:12   25   in order to protect the public.

1        THE COURT:  Mr. Jarvis, and then I'd like to see
2   probation.
3        MR. JARVIS:  I have to take issue with just a few
4   things.  The chats only show an invitation to one person, out of
11:01:22   5   all of the chats that were available, to come and visit.  There
6   was never a chat to anybody that said --
7        THE COURT:  Well, it was come and visit for specified
8   purposes, as I recall, that included seeing the children naked,
9   among other things.
11:01:35   10       MR. JARVIS:  Yes, I understand that.  But if -- and
11   again, you didn't believe this; but if you're a nudist, seeing
12   the kids naked is not a big deal.
13       THE COURT:  Well, being nude together may not be a big
14   deal; but taking a visit for the express purpose of seeing the
11:01:49   15   children naked in the context of a chat about how large their
16   penises were and how they appeared naked I think is a little
17   more suggestive than you are indicating.
18       MR. JARVIS:  And perhaps so, Judge.  But had there
19   been the intent to do what the Government says he was clearly
11:02:07   20   saying he was going to do, allowing somebody to partake of his
21   children, why didn't he in any of those chats say that?
22            And neither did Mr. Noonan.  Never once in all
23   their chats was there any insinuation between Mr. Noonan and
24   Mr. Barry "I sure enjoy touching your kids" or anything near
11:02:26   25   that.  Now, we have some posts and we've read those, but there's

1  nothing in the chats themselves that actually say that.

2         The other thing is the Government forgets that

3  there was never any evidence that Mr. Barry ever knew Mr. Noonan

4  was a registered sex offender.

11:02:46  5         THE COURT:  No, I don't think the Government suggested

6  otherwise, and I certainly agree with you there is no such

7  evidence.

8         MR. JARVIS:  Well, then, the argument that he

9  willingly took them to the mouth of the lion, he didn't know

11:02:59  10  Mr. Noonan was a lion.  And was it bad parenting?  Absolutely.

11  And should it be punished?  Absolutely.  I agree with all that.

12  My argument is if he didn't know he was a registered sex

13  offender, surely, that would lower some of his degree of

14  punishment to where he shouldn't be given the life sentence or

11:03:15  15  the 360 months which is, in essence, a life sentence because he

16  actually didn't know.

17         Thank you, Judge.

18         THE COURT:  All right.

19         Did you want to respond to anything, Ms. Zack?

11:03:24  20         MS. ZACK:  Just real quickly.  It's not just that

21  there were all of the chats.  And I know this Court looks at the

22  totality of the circumstances.  It's the person he was chatting

23  with, the fact that those chats discussed the illegality.  And

24  so, I think they were very careful in what they said, to some

11:03:42  25  extent, sometimes on those chats.

1       THE COURT:  Careful of what they sent.

2       MS. ZACK:  Right.  Sorry, sent.  Then, they --

3       THE COURT:  Or not careful enough but careful --

4       MS. ZACK:  Correct.

11:03:52  5       THE COURT:  -- nonetheless.

6       MS. ZACK:  And it wasn't -- I think the Court fully

7  acknowledges that it was contact not just with Mr. Noonan, not

8  just with the chat person but also with Mr. Whittington.  I

9  mean, this was a network, this was not a one-time thing.  This

11:04:07 10  wasn't just one incident.  It was a cumulative comprehensive

11  event that involved a lot.

12           And while maybe each little thing could be

13  explained away, when you put them all together, all it

14  demonstrates is that this was a choice he made to do these

11:04:27 15  things and to put his children in harm's way.

16       THE COURT:  May I see probation.

17    (Side-bar discussion off the record between the Court and

18  the probation officers.)

19       THE COURT:  The Court, I believe, is ready to rule.

11:06:11 20  The lawyers and Mr. Barry sat through the last sentencing, and I

21  don't need to repeat the general comments on these kinds of

22  offenses.

23           I do need to note that Mr. Barry is, again, a

24  heartbreaking mixture of evidence of a life lived well and

11:06:37 25  evidence of a life lived with what amounts to cruelty to those

1   he was responsibile for loving and protecting and nurturing; and

2   having to sentence someone who stands before the Court with both

3   qualities is difficult.

4           I've upheld the guideline calculation; but it is

11:07:19   5   troubling to me in one respect -- and I've given the parties an

6   indication of it -- and that is, that for reasons of technical

7   guideline arithmetic, in essence, a sentence that would have

8   been for guideline purposes either 360 to life or 324 to life --

9   I mean, to 405, depending -- since 43 and 44 are the same for

11:07:48   10   guideline purposes, if you back up two it would be, in effect,

11   324 to 405 as opposed to life.  That is nobody would think other

12   than a very harsh sentence, particularly, for a man of 56 years

13   old; but it is not life.

14           It is not even 360 months.  It is not 30 years,

11:08:18   15   it is 27 years.  It is harsh enough, but it respects the

16   guideline structure while acknowledging two points.  Number one,

17   the obstruction counts at this stage always make me queasy

18   because appellate review rights are intact and no one claimed

19   that this -- in a way this is the flip side of an argument that

11:08:50   20   I properly rejected, that it could have been worse.

21           No one claimed that Mr. Barry knowingly exposed

22   his children to physical acts that included penetration or other

23   even more egregious forms of sexual abuse of minors.  We're not

24   there.  Nor does anyone claim that Mr. Barry distributed the

11:09:30   25   photographs that he, I believe the evidence clearly shows, knew

1   about, helped produce, was involved in producing, and sent to

2   others.  No one claims that he did so for profit.  No one claims

3   that he did so for any purpose other than some fashion of

4   personal satisfaction.  Gratification is one way to describe it.

11:10:09   5   Whether it's the best way is not the point.  So, I'm very queasy

6   about, as a factual and legal basis matter, imposing a

7   perjury-based enhancement at this juncture, number one.

8           Number two, the reason that, with that included,

9   this is a life sentence does rest on highly technical

11:10:44   10   considerations that I am uncomfortable with, to say the least,

11   because they don't reflect the 3553(a) factors.  They don't even

12   reflect necessarily the seriousness of the offense conduct, the

13   seriousness of the criminal -- I mean, they don't correspond to

14   anything except some rule for dealing with how you score

11:11:10   15   offenses that are numerous and in some way related to each other

16   but nonetheless different counts.  That's all it is.  And I

17   don't, as a result, propose to rely on it, that part of the

18   guideline calculation, as corresponding to or reflecting the

19   3553 analysis that I'm required to do.

11:11:36   20           Based on that analysis, I believe that it is

21   appropriate, considering the nature of the conduct and the

22   nature of Mr. Barry's person, of his qualities that, obviously,

23   made him highly vulnerable to what Mr. Noonan and others induced

24   him to do -- he is fully responsible for his role, his

11:12:07   25   decisions.  He knew what he was doing.  He knew the fragile

1   state of his own children -- he described it -- and the

2   responsibility that that itself imposed on him.

3               Taking all of that into account, the Court

4   believes that the appropriate sentence in this case is that

11:12:36   5   Mr. David Morse Barry be committed to the custody of the Bureau

6   of Prisons to be imprisoned for a term of 324 months, and that

7   is on each of Counts -- each of the counts to be served

8   consecutive -- concurrently -- concurrently -- for a total of

9   324 months.

11:13:16   10              When you are released from prison, Mr. Barry,

11   you'll be on supervised release for your life.  That's life as

12   to each count, again, concurrently.  Within 72 hours of your

13   release from the custody of the Bureau of Prisons, you must

14   report in person to the probation office in the district to

11:13:35   15   which you are released.

16              During supervised release, you must comply with

17   all the standard conditions and with some additional conditions.

18   Standard conditions include that you not commit any federal,

19   state, or local crime; to not possess a firearm, ammunition,

11:13:54   20   destructive device, or other dangerous weapon; that you

21   cooperate in the collection of a DNA sample if that is

22   authorized by law; and that you comply with the requirements of

23   the Sexual Offender Registration Program.  That includes that

24   you report the address where you will live and any subsequent

11:14:12   25   change of residence to the probation officer responsible for

1  your supervision and that you must register with the Sexual

2  Offender Registration Agency in any state where you live, work,

3  carry on a vocation, or are a student or as directed by the

4  probation officer.

11:14:29  5          The probation officer will provide the state

6  officials with all information required by the State Sex

7  Offender Registration Agency and may direct you to report to

8  that agency personally for additional processing, including but

9  not limited to photographing and fingerprinting.

11:14:47  10          You must also participate in a mental health

11  treatment program and/or sex offender treatment program as

12  provided by a registered sex offender treatment provider

13  approved by the United States Probation Officer.  This may

14  include but need not be limited to counseling sessions, whether

11:15:05  15  group or individual, able screening, polygraph testing, or

16  testing, whatever is available, at the appropriate time to

17  assist in diagnosing and treating and monitoring your case

18  administered by the sex offender contractor or its designee.

19          You will participate until you are -- as

11:15:28  20  instructed and you must comply with all the policies and

21  procedures of the sex offender program until you're released

22  from that program with the approval of the probation officer.

23  You will incur the costs associated with such sex offender

24  treatment program and related testing based on your ability to

11:15:46  25  pay as the probation officer determines.

1          You give up your right of confidentiality in any

2    records for mental health treatment, including the treatment

3    that results from this judgment, to allow the supervising

4    probation officer to review your course of treatment and

11:16:02  5    progress with the treatment provider.  And I am going to

6    authorize the release of the presentence report and available

7    mental health evaluations to the mental health provider that is

8    approved by the probation officer.

9          You are ordered not to live, work, access, or

11:16:20  10   loiter within 100 feet of schoolyards, playgrounds, or other

11   places primarily used by children under the age of 18 or where

12   children frequently congregate unless approved in advance in

13   writing by the probation officer.

14         You are ordered not to seek or maintain

11:16:38  15   employment or to volunteer or participate in any way in any

16   program or activity that involves minors under the age of 18

17   without the prior written approval of the probation officer.

18   This includes activities that are athletic, religious,

19   volunteer, civic or cultural in nature, designed for, targeted

11:17:01  20   to, and participated in by minors under the age of 18.

21         I order that you not have contact with minor

22   children under the age of 18 without the prior permission in

23   writing of the probation officer.  I order that you not

24   associate with or live with any individual who has children

11:17:18  25   under the age of 18 unless approved in writing in advance by the

1   probation officer.

2           I order that you not view, possess, or have under

3   your control any nude depictions of children, sexually-oriented

4   or stimulating materials involving children, including visual,

11:17:36   5   auditory, telephonic, or electronic media, computer programs, or

6   services, again to expand whatever technology is available at

7   the relevant period.

8           I order that you not patronize any place where

9   such material or entertainment sexual in nature in any way is

11:17:53   10   the primary source of business and that you not use any

11   sex-related telephone number.

12           I order that you not subscribe to a computer

13   online service or access the Internet service unless approved in

14   advance in writing by the probation officer, and you may not

11:18:12   15   possess software or other technology capable of doing so, again

16   to encompass developments in technology that occur between now

17   and supervised release, unless specifically approved in advance

18   in writing by the probation officer.

19           And I finally order that you may have no contact

11:18:32   20   with your victims -- particularly heartbreaking in this case --

21   or with the family that is now their family in any way, by

22   writing or by any other means, including via a third party

23   without the prior written consent in advance of the probation

24   officer.

11:18:53   25           You must pay the United States a lump sum of

1   $400.  I've waived the fine.  And there's no restitution

2   obligation sought.

3             Do the parties want a chance to negotiate the

4   forfeiture or have you done so?

11:19:14   5             MR. JARVIS:  We've agreed, Judge.

6             THE COURT:  All right.

7             Do you have an order?

8             MS. ZACK:  Judge, I'm going to submit an agreed order

9   of forfeiture as to both Defendants, and we would ask that you

11:19:23  10   order probation to include that forfeiture in the judgment --

11             THE COURT:  All right.  So ordered.

12             MS. ZACK:  -- as to both Defendants.

13             And then, I will also be moving to dismiss the

14   original indictment against Mr. Barry, as well; and I will

11:19:35  15   submit all corresponding orders by close of business today.

16             THE COURT:  All right, very good.  I'll grant that

17   motion.

18             Is there any request for designation to a

19   particular facility?

11:19:45  20             MR. JARVIS:  Yes, ma'am.  My understanding is there's

21   a place in Butner, North Carolina, that handles these types of

22   cases.

23             THE COURT:  Well, it handles primarily, as I

24   understand it, the chronically ill.  Now, you may argue that

11:19:57  25   this is a form of chronic illness, but I think that they are

26

1  more involved -- that that facility is primarily involved with

2  old and very sick, because they're old, patients or patients

3  with more complicated mental -- acute medical conditions.

4              Am I correct?

11:20:16  5       MR. STABE:  You are, your Honor.  The main treatment

6  -- sex offender treatment facility has now been moved to Devens,

7  Massachusetts.

8              MR. JARVIS:  That is where we would prefer to be then,

9  Judge.

11:20:27  10      THE COURT:  All right.  I am going to recommend -- I

11  have no authority to bind, but I will recommend that the Bureau

12  of Prisons consider designating Mr. Barry to a facility where

13  the most promising source of sex offender counseling and

14  treatment is to be found.

11:20:50  15             Mr. Barry, you, of course, have the right to

16  appeal.

17             MR. JARVIS:  And to that, Judge, at this point in

18  time, we would like to announce his desire to appeal.  He's

19  indigent at this point in time.  We request a Court-appointed

11:21:05  20  attorney.

21             THE COURT:  All right.

22             MR. JARVIS:  Our contract is complete at this point.

23  I guess I need -- in some Courts, I need to file a motion to

24  withdraw.

11:21:11  25             THE COURT:  Well, I'm going to require you to do that,

Gayle Dye, CSR, RDR, CRR - 713.250.5582

 1  too --

 2          MR. JARVIS:  Yes.

 3          THE COURT:  -- as soon as we get another lawyer

 4  identified.

11:21:16  5          MR. JARVIS:  Yes.

 6          THE COURT:  But until then, will you file a written

 7  notice of appeal?

 8          MR. JARVIS:  Yes, ma'am.

 9          THE COURT:  Thank you.

11:21:23  10          And of course, Mr. Barry, you just invoked your

11  right to request the appointment of an attorney because you

12  cannot afford one to represent you on the appeal.

13          Has there been an affidavit -- financial

14  affidavit completed?

11:21:41  15          MR. JARVIS:  Probably not.

16          THE COURT:  You need to do that promptly, please.

17          MR. JARVIS:  Yes, ma'am.

18          THE COURT:  All right.  And we can then move forward

19  on that.

11:21:52  20          MR. JARVIS:  Okay.

21          THE COURT:  Will you work with him on that?

22          Or I'll get Ms. Eddins to come in and talk to you

23  about it.

24          MR. JARVIS:  Thank you, Judge.

11:21:59  25          THE COURT:  All right.  Anything further that we need

1  to do today?

2          MS. ZACK:  Nothing from the United States, your Honor.

3          MR. JARVIS:  Judge, the only thing I would like to add

4  is I appreciate the Court's professional courtesies.  When you

11:22:08  5  come in from way out of town, sometimes you don't know what

6  you're getting into; and I appreciate the Court and the clerks

7  and your people and, of course, the prosecutor's offices,

8  especially, Mr. Chappell.  They've been very courteous to us and

9  helped us out in all of the things that we needed.  So, I

11:22:23  10  appreciate that personally.

11          THE COURT:  Thank you.  These cases are always

12  difficult to try and decide, and both -- both lawyers and their

13  people they work with were not only diligent but effectively

14  represented their clients, very ably represented their clients,

11:22:51  15  and presented a case that the Court was -- I think it was well

16  presented, let me just put it that way.  Considering how

17  difficult they are, that's not always easy to do.

18          Thank you.

19          MR. JARVIS:  Thank you.

11:23:13  20          MS. ZACK:  Thank you.

21      (Proceedings concluded at 11:22 a.m.)

22                  C E R T I F I C A T E

23      I certify that the foregoing is a correct transcript
   from the record of proceedings in the above-entitled matter, to
24  the best of my ability.

25  By: /s/*Gayle L. Dye*_____          **03-09-2015**_____
        Gayle L. Dye, CSR, RDR, CRR          Date


              Gayle Dye, CSR, RDR, CRR - 713.250.5582